**FEDERAL REALTY INVESTMENT TRUST, Plaintiff,**

v.

**PACIFIC INSURANCE COMPANY, Defendant.**

**Civ. A. No. R–88–3658.**

United States District Court, D. Maryland.

Feb. 1, 1991.

Paul Martin Wolff, Williams & Connolly, Washington, D.C., and William A. McDaniel, Murphy & McDaniel, Baltimore, Md., for plaintiff.

John R. Gerstein, Eleni M. Constantine, Ross, Dixon & Masback, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

RAMSEY, District Judge.

Pending before the Court in the above-captioned case are the following motions *in limine:* 1) defendant's motion *in limine* regarding the applicable legal standard for allocation; 2) plaintiff's motion *in limine* to prohibit certain testimony by defendant's expert; and 3) plaintiff's motion *in limine* to prohibit defendant's introduction of certain evidence. Each motion has been fully briefed, and the Court will decide the motions without need for a hearing. Local Rule 105.6 (D.Md.1989). Each motion will be discussed, in turn, below.

## BACKGROUND

The instant case involves an insurance dispute under a directors and officers liability insurance policy (the "Policy") issued by defendant, Pacific Insurance Company ("Pacific"), to plaintiff, Federal Realty Investment Trust ("FRIT"). The Policy limits were $25 million and the annual premium for the policy was $18,218.

On September 29, 1988, FRIT and FRIT's trustees voluntarily settled a fraud and breach of contract action brought by FRIT's former leasing agent, ISM Associates ("ISM Litigation"). In the ISM Litigation "Settlement Agreement and Release," FRIT agreed to pay the plaintiffs $4 million in exchange for a dismissal with prejudice of the complaint. By Memorandum and Order dated January 10, 1990, ("Memorandum") the Court held: 1) that Pacific was not liable for the settlement costs sought by FRIT; and 2) that Pacific *may* be liable for defense costs associated with the ISM Litigation despite the fact that ISM had alleged fraudulent conduct on behalf of the Trustees. Each of the three motions *in limine* presently before the Court are related to the allocation of defense costs to the defendant.

In the original complaint in the ISM Litigation, the trustees of FRIT ("Trustees") were sued by ISM for fraud, breach of contract, tortious interference with contract and civil conspiracy arising out of the Trustees' decision on behalf of FRIT to terminate ISM as the exclusive leasing agent for FRIT. The counts for tortious interference and civil conspiracy were later dismissed and the case proceeded against the trustees based on the fraud and breach of contract theories.

The Trustees retained Nathan Lewin and James Rocap of the firm of Miller, Cassidy, Larroca & Lewin ("Miller Cassidy") and James Cromwell of the firm of Beckett Cromwell & Myers ("Beckett Cromwell") to represent them in the ISM Litigation. On September 25, 1985 FRIT notified Pacific of the Trustees' intent to hire these lawyers, and on October 9, 1985, Pacific responded that it had no objection to the choice of counsel subject to reservation of its rights on coverage.

Subsequent to the Trustees retaining counsel, the complaint was amended to add FRIT as a defendant with respect to the remaining fraud and contract claims. ISM also added: 1) a claim against two of the Trustees, in their individual capacity, seeking to set aside their sale of ISM stock; and 2) two claims solely against the Trust for leasing commissions and breach of an administration agreement. In response to

the new complaint, Miller Cassidy and Beckett Cromwell entered their appearances for FRIT as well as the Trustees.

The complaint was again amended by ISM. The final amended complaint contained seven counts: 1) Counts I & II alleged fraud and deceit and sought judgment against FRIT and the Trustees; 2) Count III alleged breach of contract and sought judgment against FRIT and the Trustees; 3) Count IV alleged tortious interference with contract and sought judgment against Steven J. Guttman, in his individual capacity although he was a Trustee, and Federal Realty Management, Inc., a company wholly owned by Guttman; 4) Count V alleged fraud and sought judgment against Guttman and Samuel J. Gorlitz, in their individual capacity although both of them were Trustees; 5) Count VI alleged entitlement to leasing commissions and sought judgment against FRIT only; and 6) Count VII alleged breach of administration agreement and sought judgment against FRIT only. Subsequent to the final amending of the complaint, the parties entered into the "Settlement Agreement and Release."

I. *Legal Standard for Allocation of Defense Costs*

The parties contest the legal standard for allocation of defense costs of the ISM Litigation on which the jury is to be instructed. Pacific maintains that where two defendants, one of whom is insured and one of whom is not insured, determine to share defense counsel, it is up to the jury to make a reasonable and fair allocation of defense costs between the defendants that would have resulted had the insured and uninsured defendants each been represented by independent counsel dealing at arm's length. Pacific's "arm's length" standard is premised on the principals that: 1) an insured cannot force upon his insurer expenses that can readily be avoided by the insured, and 2) the insured cannot conspire with another party to benefit each other at the insurer's expense. FRIT, relying on *Continental Cas. Co. v. Board of Educ. of Charles County*, 302 Md. 516, 489 A.2d 536 (1985), claims that when an item of legal services is "reasonably related" to the defense of the Trustees covered by insurance, the service is apportioned wholly to the covered party.

In *Continental Casualty, supra*, the Maryland Court of Appeals, on certification of questions of law from the United States District Court for the District of Maryland, addressed the issue of allocation of defense costs incurred by the insured in defense of a suit that alleged both covered and noncovered claims against the insureds with respect to a directors and officers insurance policy.

As a preliminary matter, it is clear that in the instant case the liability of Pacific for defense costs is limited by the Policy as opposed to being based on a generalized "duty to defend." *See Continental Casualty*, 302 Md. at 527–31, 489 A.2d 536. As the Court recognized in its prior Memorandum, Section A of the Policy applies to defense costs.[1] Memorandum at 6–7. The

---

**1.** Section A of the Policy, titled "Reimbursement for Directors and Officers Liability Insurance," contains the following "Insuring Clause" at paragraph 1:

> This policy shall ... pay on behalf of the insured loss (as hereinafter defined) arising from any claim or claims made during the policy period against each ... director or officer of the insured ... by reason of any wrongful act (as hereinafter defined) in their respective capacities as directors or officers of the insured, but only when the insured shall be required or permitted to indemnify the director or officer for damages, judgments, settlements, costs, charges, or expenses incurred in connection with the defense of any action,

suit, or proceeding to which the directors or officers are a party....

The definition of "loss" in Section A of the Policy appears at paragraph 2(C), and it reads:

> The term "loss" shall mean any amount the insured is required or permitted to pay to a director or officer as indemnity for a claim or claims against him arising out of those matters set forth in the insuring clause above whether actual or asserted and ... shall include damages, judgments, settlements and costs, charges and expenses, incurred in the defense of actions, suits or proceedings and appeals therefrom for which payment by the insured may be required or permitted according to applicable law, common or statutory, or under provisions of the insured's charter.

Section obligates Pacific to reimburse FRIT for any payments made for "costs, charges or expenses incurred in connection with the defense of any action" against the Trustees when FRIT is required or permitted to indemnify the Trustees.[2]

In *Continental Casualty*, certain claims against the directors and officers were found to have been covered by the D & O policy and other claims against the same persons were found to be non-covered. In determining the standard that should be applied in apportioning costs and expenses, the Court stated:

> The [insured] is entitled to be put in as good a position as it would have occupied had [the insurer] performed the contract. Counsel defending the ... suit could properly have billed [the insurer] for all services and expenses reasonably related to the defense of [covered counts]. Legal services and expenses are reasonably related to a covered count if they would have been rendered by reasonably competent counsel engaged to defend a suit against the [insured] arising out of the same factual background as did the [subject lawsuit] but which alleged only the matters complained of in [the covered counts] of the ... complaint.

302 Md. at 531–32, 489 A.2d 536.

The Court of Appeals went on to say that application of the reasonable relationship standard will depend upon the facts in the case and noted that in the case before it, much of the expenses were associated with counsel's factual preparation that was reasonably related to the defense of a covered count. The court, however, noted that the costs of factual preparation "would be related if it were not excessively disproportionate to the risk of liability against the [insured] on [the covered counts]. *Id.* at 532–33, 489 A.2d 536.

The Court of Appeals then made it abundantly clear that an insurance company is not entitled to the apportionment of costs

when legal services benefitted the defense of both covered and non-covered claims by stating:

> To phrase our meaning of "reasonably related" in another way, we do not believe that [the insurer] is entitled to an apportionment between tort and contract counts based simply on the fact that an item of legal service or expense would also be of use to counsel in defending an [non-covered] count ... in addition to its use in defending a [covered] count. Having purchased this form of litigation insurance, the [insured] is entitled to the full benefit of its bargain. So long as an item of service or expense is reasonably related to defense of a covered claim, it may be apportioned wholly to the covered claim.

*Id.* at 534, 489 A.2d 536.

Pacific implores the Court to adopt a different standard in the case *sub judice* than the "reasonably related" standard set forth in *Continental Casualty*. Relying on the principles that 1) an insured cannot force upon his insurer expenses that can readily be avoided by the insured, and 2) the insured cannot conspire with another party to benefit each other at the insurer's expense, Pacific claims that FRIT and its Trustees implicitly "assumed an obligation to enter into joint defense arrangements where such arrangements would avoid unnecessary defense costs and be consistent with 'reasonably competent' representation of their interests." Reply of Pacific in Support of its Motion *In Limine* Regarding the Applicable Legal Standard for Allocution at 3–6. Pacific concludes that based on the obligation owed it by FRIT and the Trustees, it is necessary to re-create what would have occurred in an arm's length transaction between "reasonably competent" counsel for the respective defendants. Pacific claims that such a standard

---

**2.** Although, in its decision today, the Court will set forth the legal standard for determining the allocation of defense costs between the covered and non-covered claims and parties, the determination of what claims were, in fact, covered under the Policy is not before the Court.

In its prior Memorandum, the Court merely decided that the defense costs *may* be covered by insurance although the costs are incurred in connection with allegations of fraud against Trustees. Memorandum at 11.

can be reasonably extrapolated from *Continental Casualty*.

■ Pacific's argument is unpersuasive. As pointed out by FRIT, Pacific's standard for allocation assumes that an insured has a legal obligation to hand over matters related to his own defense to another person's counsel. In addition to Pacific's failure to articulate any clear basis for this duty, this assumed obligation runs completely counter to the holding in *Continental Casualty* that an insured with litigation coverage is entitled to the full benefit of his bargain. *Id.*

Pacific also attempts to contrast the instant case with *Continental Casualty* by stating that in *Continental Casualty* there was no need to simulate an arm's length transaction because no party other than the insured was involved. Contrary to Pacific's viewpoint, if the *Continental Casualty* court had desired to create a system of allocation of defense costs between covered claims and non-covered claims similar to that requested by Pacific in the instant case, the court clearly could have simulated an arm's length transaction where it was assumed that the insured retained two counsel, one for the covered claims and one for the non-covered claims.

Finally, and again contrary to Pacific's opinion, the standard of allocation set forth *Continental Casualty* incorporates a test of "reasonableness" through its recognition that a factor in deciding whether costs are "reasonably related" is whether the expenses were excessively disproportionate to the risk of liability to the insured on the covered claims. *Id.* at 532–33, 489 A.2d 536. Accordingly, Pacific may argue that the legal services actually provided in the ISM Litigation would have been unreasonable in a suit against the Trustees on covered claims.

■ Based on the fact that the Court can see no reason why the allocation standard as set forth in *Continental Casualty* should not apply in the instant case, and because there was no indication in *Continental Casualty* that the standard set forth would apply only in cases where there was one party, the Court believes that the allocation standard of *Continental Casualty* clearly is applicable to this case notwithstanding the fact that this case contains covered and non-covered parties. Accordingly, the Court intends to give the following instruction to the jury on allocation of fees and expenses:

In order to determine the amount of damages in this case, you must decide what portion of the total fees and expenses incurred in the *ISM* action was reasonably related to the defense of the Trustees on claims by *ISM* covered by the insurance policy.

Federal Realty has the burden of establishing that a particular legal fee or expense incurred, was reasonably related to the defense of the Trustees on claims by *ISM* covered by the insurance policy. Federal Realty is not entitled to recover any of its costs that it has not proven by a preponderance of the evidence to be reasonably related to the defense of the Trustees on claims by *ISM* covered by the insurance policy.

A preponderance of the evidence means such evidence as when considered and compared with that opposed to it has more convincing force and produces in your mind belief that what is sought to be proved is more likely true than not true. If in regard to a particular issue, your minds are in a state of balance as to whether that issue has ever been proved or not, you must decide that issue against the party having the burden of proof.

(Insert stipulation regarding claims and parties that are covered or non-covered.)

With respect to the contested items, a fee or expense is reasonably related to the defense of the Trustees on covered claims if an attorney hired to defend a suit against *only* the Trustees on *only* covered claims reasonably would have decided to perform the legal service applicable to the fee or expense.

In deciding whether a fee or expense was reasonably related to the defense of the Trustees on covered claims, you *may not* consider whether the service associated with the expense or fee also aided in

the defense of a party not covered by the insurance policy or a claim not covered by the insurance policy.

On the other hand, you *may* find that services were not reasonably related to the defense of the Trustees on covered claims, if you decide that the fees and expenses associated with services performed were excessively disproportionate to the risk of liability against the Trustees on covered claims.

## II. *Motion in Limine to Prohibit Testimony by Defendant's Expert*

Plaintiff moves to prohibit testimony by defendant's expert with respect to two subjects: 1) the expected testimony by the expert regarding the applicable standard for allocation and defendant's proffered "relative exposure" standard; and 2) the expected testimony by the expert regarding the tendering of the Trustees' defense to FRIT under the Trust Agreement.

 The Court has now decided the legal standard for allocation on which the jury is to be instructed in this case. In addition to the fact that expert testimony concerning applicable legal standards is improper and inadmissible, *See Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 366–68 (4th Cir.1986), any testimony by defendant's expert regarding the "relative exposure" standard is wrong as a matter of law. Accordingly, defendant's expert shall not make any reference to the "relative exposure" standard at the time of trial.[3]

Plaintiff also seeks to preclude testimony by defendant's expert regarding the tendering of the Trustees' defense to FRIT under FRIT's Declaration of Trust. Plaintiff claims that defendant's expert: 1) will testify that Section 8.2 of the Declaration

of Trust imposes on FRIT a "duty to defend" the Trustees; and 2) will conclude that based on the alleged "duty to defend" a reasonably competent counsel representing the Trustees would have tendered the defense of the Trustees to FRIT. Defendant's, however, have responded that their expert will not testify that Section 8.2 imposes on FRIT a "duty to defend" the Trustees, but rather he will testify that reasonably competent counsel vigorously defending the Trustees would have insisted that FRIT assume financial responsibility for the vast majority of the joint defense of the ISM Litigation given the fact that FRIT allegedly recognized that it would be the ultimate liable party for any decision adverse to the Trustees.

To allow Pacific's expert to testify that FRIT may have assumed some of the defense costs because it would have been the ultimate liable party for any decision adverse to the Trustees would be nothing less than allowing Pacific to make a back-door "relative exposure" argument. In light of 1) the Court's decision that the jury will be instructed that Pacific shall be required to reimburse FRIT for the costs of all services "reasonably related" to the defense of the Trustees on covered claims and 2) Pacific's stated intention that it does not intend to proffer testimony that FRIT had a duty to defend the Trustees, any testimony regarding what a reasonably competent counsel would have requested with respect to FRIT's defense of the Trustees on covered claims is inadmissable.

## III. *Motion in Limine to Prohibit the Introduction of Evidence*

### A. Reasonableness of Attorney Fees

 FRIT claims that the following stipulation entered into between it and Pacific

---

**3.** The Court notes that although defendant's expert is instructed not to testify regarding "relative exposure," of the Trustees vis a vis FRIT, this in no way precludes testimony regarding the exposure of the Trustees on covered claims.

As the Court has made clear, the insured is entitled to recover, in full, the costs of defending against covered claims regardless of the fact that the services incurred in defending against those claims also benefited either Trustees on uncovered claims or uncovered parties. Accordingly, "relative exposure" between covered

and uncovered claims and parties is irrelevant with respect to the issue of apportioning costs and expenses. Nevertheless, as a means of demonstrating that certain fees and expenses were not "reasonably related" to the defense of the Trustees on covered claims, Pacific may seek to prove that the fees incurred were excessively disproportionate to the financial risk to the Trustees on those covered claims. If Pacific takes this approach, it will need to introduce evidence showing the perceived financial risk to the Trustees on the covered claims.

bars Pacific from offering evidence regarding the reasonableness of the total number of hours billed by the attorneys for the parties in the ISM Litigation:

> The parties, through their undersigned counsel, hereby stipulate for the purposes of trial in this matter as follows
> . . .
> (2) The total number of hours billed by the attorneys representing defendants in *ISM v. Guttman* for the defense of all claims was reasonable. This stipulation does not address the extent to which services were rendered on behalf of the Trustees.

As the Court previously has stated, as a means of demonstrating that certain fees and expenses were not "reasonably related" to the defense of the Trustees on covered claims, Pacific may seek to prove that the fees incurred were excessively disproportionate to the financial risk to the Trustees on those covered claims. 302 Md. at 532–33, 489 A.2d 536. Because the parties' stipulation "does not address the extent to which services were rendered on behalf of the Trustees," Pacific clearly is not barred from offering evidence that the fees were excessively disproportionate to the financial risk of the Trustees. The introduction of evidence that fees were excessively disproportionate to the financial risk of the Trustees on the covered claims is completely consistent with the stipulation that "[t]he total hours billed ... for the defense of all defendants and all claims was reasonable." While it may have been reasonable to incur the *total* actual expenses to provide a defense to all defendants on all claims, it may have been unreasonable to incur excessively disproportionate expenses in defense of the Trustees on covered claims relative to their risk of liability. FRIT, in fact, has indicated that it reads the stipulation in question in the same manner as the Court by stating that "Pacific is free to argue that any or all of the legal services actually provided in the underlying litigation would have been 'unreasonable' in a suit brought against the trustees alone." FRIT's Memorandum in Opposition to Pacific's Motion *in Limine* Regarding the Applicable Legal Standard for Allocation at 10–11.

Despite the fact that Pacific may challenge whether services are "reasonably related" to covered claims against the Trustees by showing excessive disproportionality between the services and Trustees' risk of liability, it is clear that Pacific may not challenge the defense of the ISM Litigation *in toto* as that was the subject matter of the stipulation. To the extent, therefore, that FRIT requests that Pacific be precluded from challenging the defense of the ISM Litigation *in toto*, the motion will be granted.

### B. Payment of the Settlement Award in the ISM Litigation

Plaintiff seeks to preclude evidence or argument that the settlement award in the ISM Litigation was made on behalf of the Trust, rather than on behalf of the Trustees. FRIT claims that any such evidence is not relevant. Fed.R.Evid. 402. Pacific, however, asserts that evidence that the settlement of the ISM Litigation was made on behalf of FRIT and not the Trustees is relevant because it shows that FRIT was the beneficiary of the legal services.

In finding that the legal standard for allocation of the defense costs is whether services incurred were "reasonably related" to the defense of the Trustees on covered claims, the Court found that the fact that legal services assisted non-covered claims or parties is irrelevant on the issue of liability for defense costs of the ISM Litigation.

In short, the Court is unable to fathom how the settlement of the ISM Litigation is relevant on the issue of allocation of the defense costs. In the Court's January 10, 1990 Memorandum, the Court specifically found that the issue of liability for defense costs of the ISM Litigation was distinct from the issue of liability for the settlement of the case. Memorandum at 4–7. Accordingly, no evidence or argument regarding on whose behalf the settlement was made or what party benefitted from the settlement will be allowed at the time of trial.

Nevertheless, in discussions regarding the ISM Litigation, the settlement will no doubt be referenced as it, in fact, was the end point of that litigation. As neither party objects to informing the jury that the ISM Litigation was settled, the only evidence the Court will allow with respect to the settlement agreement is the following: 1) the amount of the settlement; 2) who paid the settlement; 3) that the settlement expressly excluded any admissions of liability; and 4) that as a result of the settlement, ISM dismissed its claims against all parties in the ISM Litigation.

## C. Amount of Premiums Paid

Plaintiff claims that the anticipated introduction into evidence of the amount of premiums paid by FRIT to Pacific for the insurance coverage is both irrelevant and more prejudicial than probative. The Court has decided to reserve ruling on this issue until the time of trial. Both parties, however, shall make no reference to the premium amount, either in the form of evidence or argument, until such time as the Court has ruled on its admissability.

## D. Communications between ISM and Williams & Connolly

FRIT seeks to preclude evidence of communications between ISM and attorneys from Williams & Connolly, now attorneys for FRIT, that related to the ISM Litigation. Given the standard for allocation enunciated by the Court, the evidence of communications between ISM and attorneys from Williams & Connolly is clearly irrelevant.

## E. Evidence of Reserves established by FRIT

█ FRIT moves the Court to preclude evidence of reserves established by FRIT relating to the ISM Litigation. Pacific maintains that the reserve amount that pertains both to the costs of settlement and defense of the ISM Litigation are relevant to the issue of what portion of the defense costs FRIT believes might be allocated to it by the jury.

Contrary to what Pacific claims, reserve decisions are mere guesses at the outcome of litigation based on conservative accounting principles. The Court holds that the probative value of FRIT's predictions, if any, is substantially outweighed by its prejudicial aspects. No evidence with respect to the reserves, therefore, will be allowed at trial.

Accordingly, it is this first day of February, 1991, by the United States District Court for the District of Maryland,

ORDERED:

1. That defendant's motion *in limine* regarding the applicable legal standard for allocation is DENIED and the legal standard that will be given in instructions to the jury is set forth above; and

2. That plaintiff's motion *in limine* to prohibit certain testimony by defendant's expert is GRANTED; and

3. That plaintiff's motion *in limine* to prohibit defendant's introduction of certain evidence is GRANTED with respect to 1) evidence regarding the reasonableness, *in toto*, of the ISM Litigation attorney fees; 2) evidence of communications with Williams and Connolly attorneys; 3) evidence of FRIT's reserves with respect to the ISM Litigation; and 4) evidence of the settlement agreement in the ISM Litigation excepting certain facts about the settlement agreement as set forth above; and

4. That the admissability of evidence regarding the amount of premiums will be determined at the time of trial.