Ira LIGHT and Nila Light,
his wife, Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
a corporation, Defendant.

No. CIV.A. 5:95–0090.

United States District Court,
S.D. West Virginia,
at Beckley.

Oct. 16, 1998.

Kevin Burgess, Oak Hill, for plaintiffs.

Brent Kesner, Ellen R. Archibald, Charleston, for defendant.

### MEMORANDUM OPINION AND ORDER

HALLANAN, Senior District Judge.

Currently pending before the Court is Allstate's six part Motion in Limine. Allstate has requested the Court:

(1) exclude evidence of or reference to compromise discussions or offers made by Allstate to Plaintiffs;

(2) exclude evidence of or reference to Allstate's review of the Plaintiffs' liability coverage and its reserve for their UIM claim;

(3) exclude evidence of or reference to the alleged medical condition of Plaintiff, Mrs. Nila Light;

(4) exclude testimony by Mrs. Light;

(5) prohibit Mrs. Light from appearing at trial; and

(6) exclude testimony of the Plaintiffs' proposed medical experts.

Plaintiff has filed a Response to said Motion in Limine. Having reviewed said motions, as well as all memoranda and supplemental memoranda both in support and opposition, as well as all relevant case law, the Court is now prepared to issue its ruling.

### Statement of Facts

On January 27, 1993, a motor vehicle operated by Ira Light was struck head on by a motor vehicle owned by Juanita Keller and driven by her son, Shawn Keller. The Kellers were "at fault" for the accident. As a result of the collision, Ira suffered minor injuries while his wife Nila, who was a passenger, sustained more serious injuries. At the time of the accident, the Lights had a motor vehicle insurance policy with Allstate that included underinsured motorist ("UIM") coverage in the amount of $100,000. The Kellers were insured by State Farm Mutual Automobile Insurance Company ("State Farm").

On July 7, 1993, the Lights negotiated a settlement with State Farm for the full policy limit of $100,000. The Lights then executed a release discharging the Kellers from any further claims concerning the accident. Subsequently, the Lights notified Allstate that they settled their claim with State Farm. Thereafter, the Lights submitted a claim to Allstate for their UIM coverage as a result of Mrs. Light's damages exceeding the amount recovered by State Farm. Allstate refused to pay the underinsured motorist coverage as a result of the Lights not receiving consent to settle the State Farm settlement.

Allstate, however, did attempt to settle the disputed UIM claim with the Lights. On several occasions, the first being March 16, 1994, an Allstate claim adjuster offered Mr. Light $5,000 "in recognition of compromise on [Mr. Lights] part that reflected his failure to comply [with the] policy provisions ...." Then on March 17, 1994, Mr. Light was again offered $5,000 as a "compromise of the coverage issue and also a consideration of the medical information on his wife's injury ...." Allstate contends that the $5,000 offer was not based on the amount of the Lights' UIM claim, but rather, the $5,000 offer was based on the claim's invalidity and Allstate wished to settle the dispute peacefully. The Lights refused said compromise.

As a result of Allstate's failure to pay the UIM claim, the Lights filed a complaint alleging a breach of contract by Allstate. In addition, the Lights also brought a bad faith claim against Allstate for unfair settlement practices pursuant to W.Va.Code § 33–11–4(9)(1985).

### I.   Evidence of Compromise Discussions

Allstate's first request in its Motion in Limine is to exclude evidence of or reference to Allstate's $5,000 compromise offer pursuant to Fed.R.Evid. 402 and 408. In this case, the Lights made an UIM claim

under their auto insurance policy issued by Allstate after Plaintiffs had released the Kellers without Allstate's consent. After several conversations with Allstate's claim adjusters, Mr. Light was offered $5,000 by Allstate's Mr. Poynter as a compromise settlement. According to Allstate, the $5,000 compromise was offered because:

> ALLSTATE MAY NOT HAVE EMPHASIZED THE NECESSITY OF ACQUIRING OUR WRITTEN CONSENT PRIOR TO SETTLING [with the] LIAB. CARRIER [sic] THAT I WOULD CONSIDER A COMPROMISE OFFER THAT REFLECTED THIS ALONG [with a] RECOGNITION OF COMPROMISE ON HIS PART . . . .

*Allstate claim diary*, March 16, 1994. On March 17, 1994, Mr. Poynter again talked with Mr. Light and offered him $5,000 to settle the dispute. On March 17, 1994, Mr. Poynter noted in the claim diary that:

> I REITERATED THE $5,000 OFFER AGAIN STATING THAT THIS OFFER WAS A COMPROMISE OF THE COVERAGE ISSUE AND ALSO CONSIDERATION OF THE MEDICAL INFORMATION . . . .

*Allstate claim diary*, March 17, 1994.

Plaintiff contends that the $5,000 settlement offer is not relevant to the breach of contract claim, but rather, goes to show bad faith on Allstate's part in handling this dispute. Plaintiff prays that the Court enter a limiting instruction explaining this to the jury. The Court finds that Federal Rule of Evidence 408 and the case of *Hayseeds, Inc. v. State Farm Fire & Casualty* are controlling.

Federal Rule of Evidence 408 states:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.

Fed.R.Evid. 408.

■ "Fed.R.Evid. 408, and the public policy of encouraging settlement which underlies that rule, requires exclusion of . . . testimony" regarding a compromise offer. *Fiberglass Insulators, Inc. v. Dupuy*, 856 F.2d 652 (4th Cir.1988) (affirming exclusion of evidence of settlement negotiations in other actions arising from same business breakup). If "the 'statements or conduct were intended to be part of the negotiations for compromise'" of the disputed issue, no evidence of or reference to them may be offered. *Id.* at 654, quoting *Ramada Dev. Co. v. Rauch*, 644 F.2d 1097, 1106 (5th Cir.1981). To rule otherwise would reduce rather than "foster frank discussions" in settlement negotiations. *Id.*

However, Rule 408 goes on to state that it "does not require exclusion when the evidence is offered for another purpose." Evid. R. 408. The Rule gives examples of those other purposes. The Rule lists "proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation." Evid. R. 408. Plaintiffs assert that the $5,000 settlement offer should be used for "other purposes" as stated in Evid. R. 408. Specifically, Plaintiff requests that the $5,000 be used to support Plaintiffs' bad faith claim.

■ Allstate disputes Plaintiffs' request to use the $5,000 compromise offer by citing to *Hayseeds v. State Farm Fire & Cas.*, 177, W.Va. 323, 330, 352 S.E.2d 73 (1986). In *Hayseeds* the court held:

> [A] willingness to settle a case of alleged arson can no longer be used as evidence of "bad faith" because the concept of "bad faith" short of actual malice no longer has any place in the law of property damage insurance cases. In fact, to make the matter entirely explicit, an offer of settlement can never be

used to show "actual malice" nor be used against an insurance carrier in any way. *Id.* at 330, 352 S.E.2d 73. The Court finds that Allstate did in fact make an offer of settlement to Plaintiffs in an attempt to compromise with what Allstate felt was a UIM claim filed without merit by Plaintiffs. Thus, pursuant to *Hayseeds,* the Court further finds that Allstate's offer of settlement may not be used to show "actual malice" nor may it be used against Allstate in any way.

Therefore, Allstate's request to exclude evidence of or reference to Allstate's compromise offer is hereby GRANTED.

## II. Evidence of the Lights' Liability Coverage and Reference to Allstate's Claim Reserve

■ Allstate contends that its diary entries showing a claim representative's evaluation of the Plaintiffs' liability coverage is irrelevant to the UIM claim in dispute. The liability coverage entered in the diary gives a brief description of Plaintiffs' liability coverage, a brief statement of facts concerning the accident between the Lights and the Kellers, the damages suffered by Mrs. Light, and an evaluation by Allstate of what it would owe should its insured be liable for the accident. In addition, Allstate noted that it did not expect an "adverse reaction" by the Lights because they were not liable, and the Kellers' carrier, State Farm, accepted 100% liability for the accident. *Allstate claim diary,* February 11, 1993.

Plaintiffs contend however, that Allstate's analysis of the value of the claim is primary and direct evidence with regard to the claim's value. Moreover, Plaintiffs assert that the evaluation of the claim is not only evidence, but is in fact a direct admission by Allstate of monies due or at least contradicts Allstate's claim that it had no reason to suggest the seriousness of Mrs. Lights' injuries.

The Court agrees with Allstate's position in that the evaluation of the potential liability coverage shows Allstate's review of the accident claim. Since the coverage in question is Plaintiffs' UIM coverage and not their liability coverage, the Court finds that the disputed section of the claim diary is irrelevant and could easily confuse a jury. Therefore, evidence of or reference to Allstate's claim diary entry referencing Plaintiffs' liability coverage is inadmissible pursuant to Fed.R.Evid. 401, 402, 403, and thus, Allstate's Motion is **GRANTED.**

■ Allstate also seeks to exclude evidence of or reference to July 20, 1993, and September 16, 1993, claim diary entries with respect to Allstate's UIM claim reserve. When a claim is made, an insurer establishes a reserve "to estimate the pending losses to be paid[.]" Michael C. Thomsett, *Insurance Dictionary* (McFarland & Co., 1989) at 121. However, Allstate contends that the claim reserve established in this case is irrelevant to the question of liability because Allstate asserts that the reserve is set assuming liability before liability is established. Although there is no case law in our jurisdiction that fits the contours of the case at bar, at least one sister court within the Court's jurisdiction has addressed an issue analogous to the one at hand.

The insured, Federal Realty Investment Trust ("FRIT"), brought action against insurer, Pacific Insurance Company ("Pacific"), to recover defense costs in a settled breach of contract action between FRIT and ISM Associates ("ISM") over an insurance policy issued by Pacific. In the ISM "Settlement Agreement and Release," FRIT agreed to pay ISM $4 million in exchange for a dismissal with prejudice of the complaint. Prior to signing the settlement agreement with ISM however, FRIT created a claim reserve as an estimation of the cost to litigate the case in comparison to what the cost would be to settle the case.

Pacific maintained that the reserve amount that pertained to both the costs of settlement and defense of the ISM litiga-

tion were relevant to the issue of what portion of the defense cost FRIT believed might be allocated to it by the jury. FRIT moved the court through a motion in limine to preclude evidence of reserves established by FRIT relating to the ISM litigation. In granting FRIT's motion in limine the court held that, "reserve decisions are mere guesses at the outcome of litigation based on conservative accounting principles." *Fed. Realty Inv. Trust v. Pacific Insurance Co.*, 760 F.Supp. 533, 540 (D.Md.1991). In addition, the court held that the "probative value of FRIT's predictions, if any, is substantially outweighed by its prejudicial aspects." *Id.* Therefore, the court concluded by holding that, "no evidence with respect to the reserves … will be allowed at trial." *Id.*

Although the Court is not prepared to apply *FRIT's* "mere guesses" theory as to how reserves are valued and apply it generally to the insurance industry at large, the Court does adopt the court's theory that the probative value of the reserves, as applied to this case, is substantially outweighed by its prejudicial aspects, and like the holding in *FRIT,* no evidence regarding Allstate's reserve will be allowed at trial.

### III. Evidence to the Alleged Medical Condition of Mrs. Light

■ Allstate seeks to exclude evidence of or reference to Mrs. Light's medical or psychological condition. Allstate contends that Mrs. Light's medical condition is irrelevant where the issues in this case are unrelated to her medical condition. The Court is amazed at Allstate's attempt to put before this Court two wholly inconsistent arguments. In Allstate's Motion to Stay Proceedings Pending Resolution of the Tort Action and Memorandum in Support of said motion at page 4, Allstate advances the argument that the Court should stay proceedings until the Lights' civil suit against the Kellers in the Fayette County Court has the opportunity to determine the Kellers' liability to the Plaintiffs. To support this position, Allstate argued in its Motion to Stay that:

> There has never been a determination that the Plaintiffs are "legally entitled" to recover any amount from the Kellers. Furthermore, there has never been a determination that they are "legally entitled" to recover an amount in excess of the liability coverage available to the Kellers, which has previously been paid to them. Thus, there has never been a determination that the Plaintiffs' damages are sufficient to trigger coverage under Allstate's Policy.

*Allstate's Motion to Stay Proceedings,* p. 4. Allstate further argued that if the Court did not stay the proceedings, "it [would] be necessary to first have a trial within the trial to determine whether the Plaintiffs are entitled to damages …." *Id.* at 5. The Court denied Allstate's Motion to Stay.

The Court reasonably concludes that Allstate would agree that should the Court stay the present case before the Court, medical evidence would be relevant to prove damages in the civil case in Fayette County in order to determine what damages, if any, Plaintiffs are "legally entitled" to. Since the Court did not stay the proceedings, the Court finds there to be no difference in this case. Damages must be proven, therefore, for Allstate to now advance the argument that evidence of or reference to Mrs. Light's medical or psychological condition are irrelevant, is incongruous at best.

In addition, the Court does not understand why Allstate claims that Mrs. Light's medical records "appear incomplete" if Allstate has had a medical release signed by Mrs. Light since 1993. It appears that Allstate has had more than enough time, five years to precise, to acquire the requisite medical records in order to do follow up discovery. In any case, if Plaintiff has not disclosed to Allstate prior to trial something Plaintiffs seeks to use in Court, the Court will at that time make a determination of whether or not to allow it in.

For the aforementioned reasons, the Court finds that evidence of or reference to Mrs. Light's medical or psychological condition is relevant and Allstate's motion to exclude is DENIED.

### IV. Excluding Testimony by Mrs. Light

Allstate next contends that Mrs. Light's testimony is inadmissible where she has never been deposed, despite an Order for her deposition. Plaintiffs do not contest Allstate's request, and therefore, Allstate's request to exclude testimony by Mrs. Light is **GRANTED.**

### V. Prohibit Mrs. Light from Appearing at Trial

Allstate also contends that Mrs. Light's appearance at trial should be prohibited because it would unduly prejudice Allstate's defense of the contract and bad faith claims. Again, Plaintiffs do not contest this issue and therefore, Allstate's request in **GRANTED.**

### VI. Excluding testimony of the Lights' Proposed Medical Experts

Finally, Allstate contends that Mrs. Light's treating physicians' testimony is irrelevant, and retained experts' testimony is inadmissible where no Fed.R.Civ.P. 26(a)(2)(B) information has been provided. As to the relevancy of Mrs. Light's treating physicians, the Court has already determined that medical evidence in this case is relevant. See III, above. In addition, the Court further finds that experts' testimony is admissible if the provisions under Fed.R.Civ.P. 26(a)(2)(B) have been followed by the parties. The question of whether Fed.R.Civ.P. 26(a)(2)(B) have been followed is a discovery matter for the Magistrate and not this Court to decide. However, the Court does Order Plaintiffs to disclose to Allstate, promptly and prior to trial, who will be testifying as an expert and who will be testifying as Mrs. Light's treating physicians if it has not been done so already.

Therefore, Allstate's request to exclude Plaintiffs' proposed medical experts is **DENIED.**

For the foregoing reasons, it is hereby **ORDERED** that Allstate's Motion in Limine regarding:

(1) the exclusion of evidence or reference to compromise discussions or offers made by Allstate to Plaintiffs be **GRANTED;**

(2) the exclusion of evidence or reference to Allstate's review of the Plaintiffs' liability coverage be **GRANTED** and exclusion of evidence or reference to Allstate's claim reserves be **GRANTED.**

(3) the exclusion of evidence or reference to the alleged medical condition of Plaintiff, Mrs. Nila Light be **DENIED.**

(4) the exclusion of testimony by Mrs. Light be **GRANTED.**

(5) the prohibition of Mrs. Light from appearing at trial be **GRANTED;** and

(6) the exclusion of testimony of Plaintiffs' proposed medical experts be **DENIED.**