RYLAND MORTGAGE CO., INC.

v.

TRAVELERS INDEMNITY CO. OF ILLINOIS, et al.

Civ.A. No. WMN–00–1118.

United States District Court, D. Maryland.

Oct. 30, 2001.

**436**

Anna P. Engh, Tracy Helene Cohen, Covington & Burling, William F. Greaney, Ralph M. Muoio, Washington, DC, for plaintiff.

Daniel James Standish, Dale E. Hausman, Wiley, Rein & Fielding, Erin Nugent McGonagle, Jackson & Campbell PC, Washington, DC, Michael McGowan, McGowan, Cecil and Smathers LLC, Laurel, MD, for defendants.

### MEMORANDUM

NICKERSON, District Judge.

Before the Court are: Defendant Travelers Indemnity Company of Illinois' ("Travelers") motion for partial summary judgment (Paper No. 51), Defendant Liberty Mutual Insurance Company's ("Liberty Mutual") opposition to Travelers' motion (Paper No. 55), and Plaintiff's cross-motion for partial summary judgment against Travelers (Paper No. 56). All motions are fully briefed and are ripe for decision. Upon a review of the pleadings and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Plaintiff's motion will be granted and Defendant Travelers' motion will be denied.

### I. BACKGROUND

Plaintiff Ryland, a mortgage company, seeks insurance coverage for costs and fees incurred in defending itself and another party against an underlying California lawsuit. A detailed discussion of the factual background of this case appears in an earlier memorandum issued by this Court. *See,* Memorandum dated February 13, 2001 (Paper No. 47). Facts relevant to the issues now before the Court will be presented here.

On May 28, 1994, Steve Fallen was allegedly injured when he slipped and fell down the back stairway of a multi-residential building in Los Angeles. The building was held in trust by State Street Bank & Trust Company ("State Street") and the mortgage loans were serviced and administered by Plaintiff, Ryland Mortgage Company, Inc. ("Ryland"), pursuant to a Pooling and Servicing Agreement ("Agreement").[1] Under the Agreement, Ryland agreed, *inter alia,* "to indemnify [State Street] from, and hold it harmless against, any and all losses, liabilities, damages, claims or expenses (including reasonable attorneys' fees) arising in respect of [Ryland's] acts or omissions in connection with this Agreement or the Certificates." San-

---

**1.** The Agreement was entered into by State Street and Ryland with the Resolution Trust Company as conservator of Columbia Savings and Loan Association, F.A., as seller on June 1, 1991. Under the Agreement, State Street was to act as Trustee, holding the building in trust for the certificate holders of the Resolution Trust Company, and Ryland was to act as Servicer of mortgages.

zone Aff., Ex. 2 at § 8.05(c). The Agreement also required both Ryland and State Street to maintain appropriate insurance protection. *See id.* §§ 3.06, 8.07.

Mr. Fallen and his wife sued Ryland, State Street, and various individuals in California state court for negligence damages and loss of consortium.[2] Specifically, Mr. Fallen alleged that "Defendant Ryland, as an agent or employee of Defendant State Street Bank[,] was entrusted to provide a safe premises for any guests or invitees including Plaintiff Fallen and failed to do so by allowing the subject premises and particularly, the exterior rear stairway, to remain unreasonably dangerous. Ryland had actual knowledge of the dangerous condition on the subject premises." Third Amended *Fallen* Compl. ¶ 35 (unnecessary capitalization omitted). Mr. Fallen also alleged that Ryland, State Street, and the other defendants were in possession of certain insurance proceeds that were specifically earmarked for repair of the rear stairway, and that the defendants negligently failed to release said funds for said purpose, despite a resident's repeated requests that Ryland do so. *See id.* ¶¶ 22, 51.

On February 1, 1996, Ryland notified its insurance company, Travelers, of the *Fallen* action. Travelers initially agreed to provide a defense to Ryland pursuant to a commercial general liability ("CGL") policy issued to Ryland on February 7, 1994, for the 1994 calendar year. The policy provided coverage up to $2,000,000 (with a $500,000 deductible) for damages stemming from bodily injury to third parties caused by an "occurrence." *See* CGL Coverage Form § I.A.1. An "occurrence" was defined as "an accident, including continuous or repeated exposure to substantially

the same general harmful conditions." *Id.* at § V.9. Included in the bodily injury provision was "the right and duty to defend any 'suit' seeking those damages." *Id.* at § I.A.1. Ryland's policy with Travelers also covered "insured contracts," defined as "that part of any other contract or agreement pertaining to your business ... under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." *Id.* at § V.6.f.

Travelers subsequently declined coverage to Ryland for the *Fallen* defense, but later agreed to "participate in" the *Fallen* litigation, subject to multiple limitations and reservations. *See* Memorandum dated February 13, 2001. Ryland also sought coverage from State Street's commercial general liability carrier, Liberty Mutual, pursuant to a CGL policy identical to the one issued by Travelers. Liberty Mutual denied coverage to Ryland. Soon thereafter, Plaintiff commenced this lawsuit against Defendants Travelers and Liberty Mutual in this Court seeking declaratory relief, money damages, specific performance, attorneys' fees, and equitable contribution arising from Defendants' refusal to defend or indemnify Ryland in the underlying *Fallen* case.

Earlier in this action, Travelers moved for summary judgment as to its duty to defend Ryland, based upon a provision in the Travelers/Ryland policy that excludes coverage for financial institutions' errors and omissions. This Court found that the exclusion was inapplicable, and that "it is clear that Travelers has an affirmative obligation to defend Ryland in the underlying *Fallen* action." February 13, 2001 Memorandum at 9. After so finding, this Court denied Travelers' motion and granted Ry-

**2.** The *Fallen* action, styled *Fallen, et al. v. Stein, et al.*, No. BC 127331 (Cal.Super. Ct., Los Angeles County), was fully resolved by a settlement agreement in December, 2000. The terms of the agreement are protected by a confidentiality provision.

land's motion as to Travelers' duty to defend.[3]

Travelers now moves for partial summary judgment as to its duty to indemnify Ryland for defense and indemnity costs incurred by Ryland on behalf of State Street. Travelers also seeks summary judgment as to its entitlement to contribution from Liberty Mutual and/or allocation of costs to Ryland. Liberty Mutual opposes the motion, and Ryland has filed a cross-motion for partial summary judgment against Travelers, seeking full reimbursement (in excess of its deductible) of its expenses in the *Fallen* action and attorneys' fees in this action.

## II. LEGAL STANDARD

A moving party is entitled to summary judgment only if it can show that there exists no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Blue Ridge Ins. Co. v. Puig,* 64 F.Supp.2d 514 (D.Md.1999) (citing inter alia *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

When both parties file motions for summary judgment, the court applies the same standards of review. *Taft Broadcasting Co. v. United States,* 929 F.2d 240, 248 (6th Cir.1991); *ITCO Corp. v. Michelin Tire Corp.,* 722 F.2d 42, 45 n. 3 (4th Cir.1983) ("The court is not permitted to resolve genuine issues of material facts on a motion for summary judgment—even where ... both parties have filed cross motions for summary judgment")(emphasis omitted), *cert. denied,* 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985). The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Towne Mgmt. Corp. v. Hartford Acc. and Indem. Co.,* 627 F.Supp. 170, 172 (D.Md.1985)(quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil* 2d § 2720 (2d ed.1993)). *See also Federal Sav. and Loan Ins. Corp. v. Heidrick,* 774 F.Supp. 352, 356 (D.Md. 1991). "[C]ross-motions for summary judgment do not automatically empower the court to dispense with the determination whether questions of material fact exist." *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt,* 700 F.2d 341, 349 (7th Cir.1983), *cert. denied,* 464 U.S. 805, 104 S.Ct. 53, 78 L.Ed.2d 72 (1983). "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed.Cir.1987). Both motions may be denied. *See Shook v. United States,* 713 F.2d 662, 665 (11th Cir.1983).

## III. DISCUSSION

### A. *Travelers' Duty to Indemnify*

Travelers now contends that it has no duty to indemnify Ryland for defense and indemnity costs incurred by Ryland on behalf of State Street in the *Fallen* action. Travelers does not dispute that its policy with Ryland covered "insured contracts," nor do they dispute that the Agreement between Ryland and State Street constituted such an insured contract. Rather,

---

**3.** In that same Memorandum, the Court denied both Ryland's and Liberty Mutual's motions for summary judgment as to Liberty Mutual's duty to defend Ryland, on the grounds that there was a material dispute as to whether Ryland was acting as State Street's "real estate manager" and thus was covered as such under the Liberty Mutual policy. *Id.* at 16. This issue is not presently before the Court.

the dispute lies in whether the allegations in the *Fallen* lawsuit pertained to State Street liabilities that were contractually assumed by Ryland in the Agreement (i.e., those arising out of Ryland's "acts or omissions"). Travelers argues that they did not, and that the *Fallen* plaintiffs sought to impose liability on State Street for its *own* actions as owner/trustee of the premises, in addition to any liability that may have arisen from Ryland's alleged acts or omissions.

■■ An insurer's obligation to defend its insured under a contract provision-here, the insured contract provision-is determined by the allegations in the underlying lawsuit. *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 347 A.2d 842 (1975). Any doubts as to whether the allegations of a complaint trigger an insurer's duty to defend should be resolved in favor of the insured. *See, Aetna Cas. & Sur. Co. v. Cochran*, 337 Md. 98, 651 A.2d 859, 863–64 (1995); *Utica Mut. Ins. Co. v. Miller*, 130 Md.App. 373, 746 A.2d 935, 940–41 (Md.Ct. Spec.App.2000), *cert. denied*, 359 Md. 31, 753 A.2d 3 (2000). It is also established that courts should construe "insured contract" provisions broadly, in favor of coverage. *See, Mid–Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 492–93 (5th Cir.2000).

■ In their Third Amended Complaint, the *Fallen* plaintiffs set forth five causes of action, only the first of which is presently a matter of dispute. The third, fourth, and fifth causes of action name both Ryland and State Street as defendants and allege the same negligence by both. The second cause of action names Ryland but not State Street as a defendant. The first cause of action, however, is styled as, "Negligence Against Stein, State Street Bank, and Does 1 through 20, Inclusive." Third Amended *Fallen* Compl. at 7. Travelers asserts that under this cause of ac-

tion, the *Fallen* plaintiffs sought to impose liability on State Street bank alone, as owner and operator of the premises. *See* Travelers' Mot. at 12. In support of their argument, Travelers cites excerpts of the first cause of action that refer to State Street Bank as owner of the premises, without reference to Ryland. *Id.* (citing Third Amended *Fallen* Compl. at ¶¶ 22, 23).

Although the heading and certain excerpts from the first cause of action would indicate that State Street's alleged liability could stand alone, a thorough reading of the supporting information that provides a more complete picture of the cause of action, *id.* at ¶¶ 19–32, demonstrates that State Street's relationship to Ryland is crucial to the claim. Specifically, the claim relies upon Ryland's alleged role as State Street's servicing agent in order to establish State Street's liability. For example, the *Fallen* plaintiffs claim that State Street bank had constructive knowledge of the damaged stairs because Ryland ("State Street's agent") was informed of the damage and was asked to assess and repair it. *Id.* at ¶ 21. The cause of action also asserts that "State Street Bank, through its agent, Ryland" failed to use earmarked funds to make the necessary repairs, despite repeated requests to do so. *Id.* at ¶¶ 21, 22. The complaint further states that on the day of Fallen's alleged injury, "Defendant State Street Bank owned such premises, and Defendant Ryland serviced the subject premises as State Street Bank's agent." *Id.* at ¶ 25 (unnecessary capitalization omitted). Therefore, although the first cause of action *in name* appears to impose liability only on State Street, a closer and more comprehensive reading shows that any negligence by State Street cannot be separated from the bank's relationship (as defined by the Agreement) with Ryland.

This interpretation of the *Fallen* action is further supported by the uncontroverted testimony of Attorney David Epstein, who served as lead counsel for both Ryland and State Street in defending the *Fallen* action. In his affidavit, Mr. Epstein confirms that throughout the litigation it was undisputed that "[t]he claimed liability against State Street was entirely derivative of the alleged active negligence by Ryland." Epstein Aff. at ¶ 6. Mr. Epstein explains that "[n]o contention was ever made by plaintiffs or by any other party to the action that State Street's potential liability would be anything other than vicarious liability as title holder for the alleged active negligence by Ryland." *Id.* at ¶ 8. Travelers has offered no evidence to contradict Mr. Epstein's testimony, nor have they pointed to any case law that counsels for their proposed interpretation of the *Fallen* complaint. Therefore, the Court finds that there is no genuine dispute that any liability alleged against State Street was that which arose out of the alleged "acts or omissions" of Ryland, and were therefore covered under the Ryland/State Street Agreement, which is undisputably an insured contract under the Travelers policy.

■ The Court notes that, even if it were determined that liability could have been imposed on State Street independent of Ryland's acts or omissions, Travelers would still have a duty to indemnify Ryland for the cost of defending the *Fallen* suit on behalf of State Street. Under the test set forth in *Continental Casualty v. Board of Educ. of Charles County*, an insurer is not entitled to "an apportionment between [covered] and [uncovered] counts

based simply on the fact that an item of legal service or expense would also be of use to counsel in defending a claim asserted under an [uncovered] count of the suit in addition to its use in defending a [covered] count."[4] 302 Md. 516, 489 A.2d 536, 545 (1985). The court goes on to hold that, "[s]o long as an item of service or expense is reasonably related to defense of a covered claim, it may be apportioned wholly to the covered claim." *Id.* According to the court, "[l]egal services and expenses are reasonably related to a covered count if they would have been rendered and incurred by reasonably competent counsel engaged to defend a suit." *Id.* at 544. This Court has extended the "reasonably related" test from the context of covered and un-covered *claims*, to the allocation of defense expenses among covered and uncovered *parties*. *See, Federal Realty Investment Trust v. Pacific Ins. Co.*, 760 F.Supp. 533, 537 (D.Md.1991).

Under the "reasonably related" test, Travelers would be obligated to pay all defense costs that are reasonably related to the defense of Ryland, even if such costs also benefitted the defense of State Street. In its reply motion, Travelers asserts that "[a]s the costs expended benefitted both parties [Ryland and State Street] equally, a reasonable apportionment would require Travelers to pay only 50% of the defense and settlement costs incurred to jointly benefit Ryland and State Street ...." Travelers' Reply at 4. Not only does this assertion ignore the governing rule of *Continental Casualty*, but it is also unsupported by any evidence. In contrast, Ryland offers the testimony of Attorney Epstein, who states that the vast majority of legal fees and expenses incurred by Ryland in

---

4.  The *Continental Casualty* decision stands as a seminal case in this area, and although it was decided in the context of directors and officers liability insurance, it has been applied to the general liability coverage context. *See,* *e.g., Potomac Electric Power Co. v. California Union Ins. Co.*, 777 F.Supp. 980, 984 (D.D.C. 1991) (applying the *Continental Casualty* rule to general liability policies).

defending both itself and State Street "were reasonably related to the defense of Ryland (even if they may have also benefitted State Street)." Epstein Aff. at ¶ 11. Mr. Epstein concludes that, of a total expenditure of over $1 million in legal fees and costs, only $12,241.38 could be attributed to separate costs and fees for the defense of State Street, separate and apart from Ryland's defense.[5] *Id.* The Court need not decide whether this amount should be excepted from Travelers' duty to indemnify Ryland, since the Court does not base its holding on this ground.

### B. Travelers' Entitlement to Contribution from Liberty Mutual

■ Travelers argues that if the Court finds that Travelers is obligated to reimburse Ryland for defense costs that benefitted State Street, then Travelers is entitled to contribution from Liberty Mutual for half of those defense costs and half the settlement amount, pursuant to the "other insurance" clauses in the two policies. Were it not for the Agreement between Ryland and State Street, Travelers' argument would have merit, since State Street's policy with Liberty Mutual includes coverage for defense costs in cases of bodily injury as alleged in *Fallen. See* Travelers' Mot. at Ex. 2B. This Court has found, however, that the Agreement is an insured contract covered by Travelers, and that the *Fallen* action arose out of acts or omissions of Ryland as covered by that Agreement. It follows that Travelers is not entitled to contribution from Liberty Mutual for costs that Travelers is obligated to pay under its own policy with Ryland.

### C. Travelers' Duty to Pay Ryland's Attorneys' Fees in this Action

■ Ryland argues that Travelers should be obligated to reimburse Ryland for legal costs and expenses incurred in this coverage action. The Court agrees. "The rule in this State is firmly established that when an insured must resort to litigation to enforce its liability insurer's contractual duty to provide coverage for its potential liability to injured third persons, the insured is entitled to a recovery of the attorneys' fees and expenses incurred in the litigation." *Nolt v. United States Fid. & Guar. Co.*, 329 Md. 52, 617 A.2d 578, 584 (1993). Ryland has submitted evidence of its repeated attempts to resolve its coverage issues with Travelers without unnecessary delay or litigation. *See* Ryland Mot. at Ex. 2A. As further evidence of Travelers' resistance in this matter, the Court notes that although in its latest motion Travelers concedes its duty to indemnify Ryland for half of its *Fallen* defense costs (in excess of Ryland's $500,000 deductible), Travelers has not done so. For these reasons, the Court finds that Ryland is entitled to reasonable attorneys' fees and costs for this coverage action.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff's motion for partial summary judgment as to Travelers' duty to indemnify Ryland for defense and indemnity costs incurred by Ryland on behalf of State Street, and for reasonable attorneys' fees in this matter. Defendant Travelers' motion for partial summary judgment will be denied. A separate order will issue.

---

**5.** Mr. Epstein attributes this amount to preparation of a summary judgment motion, two deposition witnesses, and discovery responses on behalf of State Street. Epstein Aff. at ¶ 11.

The Court notes that Travelers has stated that it "has no substantively material objections to the handling of the defense provided [to] Ryland ...." Travelers' Reply at 5.

## ORDER

Pursuant to the foregoing memorandum, and for the reasons stated therein, IT IS this      day of October 2001, by the United States District Court for the District of Maryland, hereby ORDERED:

1. That Plaintiff's Cross–Motion for Partial Summary Judgment Against Travelers (Paper No. 56) is hereby GRANTED;

2. That Defendant Travelers' Motion for Partial Summary Judgment (Paper No. 51) is hereby DENIED;

3. That Plaintiff Ryland shall file a supplemental brief and a proposed order as to the amount of attorneys' fees and costs incurred in this action within 20 days. If Defendant Travelers wishes to reply, they shall do so within 15 days of Plaintiff's filing;

4. That this case is hereby CLOSED;

5. That judgment is hereby ENTERED in favor of Plaintiff Ryland and Defendant Liberty Mutual, and against Defendant Travelers;

6. That any and all prior rulings made by this Court disposing of any claims against any parties are incorporated by reference herein and this order shall be deemed to be a final judgment within the meaning of Fed.R.Civ.P. 58; and

7. That the Clerk of the Court shall mail or transmit copies of the foregoing Memorandum and this Order to all counsel of record.