273 S.E.2d 553 (1981)
J. B. MOORE ELECTRICAL CONTRACTOR, INC.
v.
WESTINGHOUSE ELECTRIC SUPPLY COMPANY.
Record No. 781676.
Supreme Court of Virginia.
January 16, 1981.
*554 J. C. Crumbley, III, Lynchburg, for appellant.
Robert E. Hawthorne, Roanoke (Wilson, Hawthorne & Vogel, Roanoke, on brief), for appellee.
Before I'ANSON, C. J., and CARRICO, HARRISON, COCHRAN, POFF, COMPTON and THOMPSON, JJ.
COCHRAN, Justice.
Westinghouse Electric Supply Company (Wesco) initiated this action in the court below against J. B. Moore Electrical Contractor, Inc. (Moore), to recover the balance of $5,746.77 alleged to be due on a contract for the sale of electrical equipment. Moore denied liability and filed a counterclaim for $75,000 for damages alleged to have been caused by Wesco's failure to deliver the equipment within the time specified in the contract.
The threshold question whether the contract subjected Wesco to liability for delay in delivery was submitted to the trial court for determination. After considering the various writings relevant to the transaction *555 and the arguments of counsel, the court, ruling in favor of Wesco, entered judgment in the amount sued for, with 8% interest from September 30, 1976, and dismissed Moore's counterclaim. Moore has appealed on the ground that the trial court misconstrued the contractual obligation of Wesco. There was no evidentiary hearing in the trial court, but a written statement of facts signed by the trial judge was made a part of the record under the provisions of Rule 5:9(c).
In the spring of 1972, Moore submitted a bid for a subcontract for delivery and installation of electrical equipment in a Fine Arts Center building to be constructed at Lynchburg College. Before doing so, it approached Wesco about the possibility of Wesco's supplying the electrical equipment needed for the project.
Moore's agent reviewed with Wesco's representative the plans and specifications for the subcontract, which contained a requirement for completion within 480 days of the starting date and a provision for liquidated damages to be assessed against the subcontractor for late completion. The Wesco representative filled out in handwriting and submitted to Moore's agent on May 25,[1] 1972, a printed Wesco purchase order form providing for "Hub Stage lighting subject to plans and specifications" for the building at a price of $94,027.00. The Purchase Order contained a handwritten provision for cancellation without incurring cancellation charges if Moore should not be awarded the electrical subcontract. Printed at the bottom was this statement: "This Order is subject to the Company's acceptance at its office, and to the conditions on the back hereof". The reverse side of the form contained numerous printed provisions entitled "STANDARD CONDITIONS APPLYING TO ALL TRANSACTIONS", including the following:
"Shipping dates given in advance of actual shipment are estimated, and deliveries will be made subject to prior orders on file with us. We shall not be liable for delays resulting from fire, labor difficulties, transportation difficulties or delays in our usual sources of supply or, without limitation by the foregoing, any causes beyond our reasonable control. Receipt of goods shall constitute a waiver of all claims for delay.
* * * * * *
"We shall not under any circumstances be liable for special, indirect, or consequential damages, whether arising from defects in products, delays in shipment, use or resale of products, or any other cause."
Moore's agent signed the Purchase Order for his company in the space designated on the front of the form for the purchaser's signature. There was no signature line on the form for use by Wesco. Counsel for Wesco stated several times on brief and in oral argument that the Purchase Order was signed by Moore's agent in Wesco's Lynchburg office and there presented to Wesco's representative. Counsel for Moore has never denied this statement, but has pointed out that the record does not show where the form was signed. The record also fails to show when Moore submitted its bid for the electrical subcontract, but Moore's counsel conceded in oral argument before us that the bid was based upon the firm price specified by Wesco in the Purchase Order. We will assume, therefore, that the bid was submitted after the signed Purchase Order was received in the Wesco office.
The subcontract was awarded to Moore on June 5, 1972, and by letter dated June 6, signed by the same agent who signed the Purchase Order, Moore so informed Wesco at its Lynchburg office and reaffirmed its intention to purchase the equipment specified in the Purchase Order. The letter contained this statement:
"We further call to your attention the following conditions of our contract and require your compliance thereto:
"1. Liquidated Damages (see Supplementary General Conditions). The starting date of our contract has been established *556 as June 1, 1972 .... Delays caused by you which might result in the Liquidated Damage Clause being enforced will be charged to you."
* * * * * *
On June 15, 1972, the Wesco Branch Manager, whose office was in Roanoke, wrote to Moore, thanked the company for the order, but stated, in reference to Moore's June 6 letter, that Wesco or Westinghouse Electric Corporation "will not accept liquidated damages under any circumstances." Moore replied by letter dated June 19 as follows:
* * * * * *
"However, I must point out, by the specifications and your acceptance of this order, your company is subject to the specifications and if liquidated damages are incurred due to the negligence of your company ... then such charges will be the responsibility of your company."
* * * * * *
Wesco did not respond to this letter. Neither Wesco nor Moore repudiated or cancelled the contract, and Wesco eventually delivered the electrical equipment. The court below assumed that some of the deliveries were late. Moore failed to complete its subcontract on schedule and was assessed by the general contractor the sum of $5,746.77 in liquidated damages for which Moore sought to hold Wesco responsible. After deducting the amount of the liquidated damages, Moore paid to Wesco the balance of the price specified in the Purchase Order.
In its written opinion the trial court noted that Wesco relied upon Code § 8.2-207[2] in arguing that Wesco and Moore entered into a contract that did not impose liability upon Wesco for liquidated damages. It appeared to the court "from the writings between the parties that Moore accepted the proposal" of Wesco to supply the materials and that the "acceptance was not `expressly made conditional on assent to the additional or different terms'", as provided in Code § 8.2-207. Acknowledging that Moore insisted that Wesco accept responsibility for consequential damages, the court concluded that Moore's writings failed to show that it was not accepting Wesco's proposal if Wesco declined to agree to the additional terms sought to be included, and that Wesco did not agree to the additional terms.
The court also was of opinion that even if Moore had expressly made its acceptance of the Wesco proposal subject to Wesco's agreement to be responsible for consequential damages, Wesco would not be liable because it had expressly eliminated such potential liability in its offer. Accordingly, under the court's alternative rationale, though there would be no contract "on the writings" because of the lack of agreement, by the conduct of the parties there would have been an implied contract for payment of Wesco's price upon acceptance by Moore of the electrical equipment delivered by Wesco.
Moore maintains that the trial court incorrectly concluded that its status in the transaction was that of the offeree. By the weight of authority, Moore says, one who orders from a seller is the offeror, and if Moore had been so identified the trial court must necessarily have ruled that Wesco failed to make its acceptance of the Purchase Order conditioned upon elimination of the provisions for consequential damages.
As a general rule, the submission of a purchase order by a prospective buyer is viewed as an offer which may then be accepted or rejected by a seller. See, e. g., Code § 8.2-206(1);[3] Stewart-Decatur Security *557 Sys. v. Von Weise Gear Co., 517 F.2d 1136, 1139 (8th Cir. 1975), where a written purchase order prepared by a buyer was deemed to be an offer. However, the determination whether an offer inviting acceptance has been made is controlled by the expressed intention of the offeror.See Corbin on Contracts, § 11, at 25 (1963);see also Code § 8.2-204.[4] Accordingly, a purchase order prepared and submitted by a seller, and intended to be an offer, could ripen into a contract upon acceptance by the buyer.
The cases relied upon by Moore are distinguishable on their facts from the present case. In Three-Seventy Leasing Corp. v. Ampex Corp., 528 F.2d 993 (5th Cir. 1976), the seller submitted to the buyer a purchase order that was already filled out, and the buyer's agent signed it. The seller contended that the submission of the prepared purchase order was an offer, and that by signing it the buyer accepted its terms, thus giving rise to a binding contract. This contention was rejected by the court. The purchase order had a place for the seller's signature, and the court ruled that the failure of any agent of the seller to sign negated any inference that the seller intended the order to be an offer.
InAntonucci v. Stevens Dodge, Inc., 73 Misc.2d 173, 340 N.Y.S.2d 979 (Civ.Ct.N.Y.C. 1973), submission of a purchase order by an automobile dealer to a prospective buyer was held to be an invitation to make an offer, and the signing of the order by the buyer was thus construed as an offer to buy. But here also the purchase order had a signature line for the dealer's signature, and the dealer had not signed.
The facts in the present case more closely resemble those in Servco Equipment Company v. C. M. Lingle Company, 487 S.W.2d 869 (Mo.Ct.App.1972), where a purchase order submitted by a buyer, in response to a "Quotation" by a seller, was held to be an acceptance of the seller's offer. The buyer, who was a subcontractor, had forwarded by mail to the seller certain plans and specifications; the seller responded with a "Quotation" offering to supply the requested item at a specified price. Upon being awarded the subcontract, the buyer prepared and returned to the seller the purchase order in the exact terms of the "Quotation". The court held that a contract arose by acceptance by means of the signed purchase order of the offer tendered in the "Quotation". See also Earl M. Jorgensen Co. v. Mark Construction, Inc., 56 Hawaii 466, 540 P.2d 978 (1975).
In this case the Purchase Order was prepared by Wesco after review with Moore of plans and specifications for the electrical subcontract for the proposed new building. It constituted an offer to furnish the electrical equipment described in the plans and specifications for a fixed price that Moore could and did use as the basis for its bid for the subcontract. Acting in reliance on the price fixed by Wesco, Moore offered to assume the obligations required of the electrical subcontractor, and this offer was accepted on June 5. If the price specified in the Purchase Order had been merely a tentative quotation, or an estimate, Moore would have been bidding on the subcontract exposed to the possibility that the Wesco price, when thereafter firmly fixed, might substantially exceed the estimate and result in a loss to the subcontractor. Moreover, it is reasonable to assume that deletion of the standard clause disclaiming liability for consequential damages would have altered the price specified in the Purchase Order. We hold that the trial court did not err in ruling that Wesco was the offeror submitting to Moore an offer to supply equipment at a fixed price in the Purchase Order that was signed by Moore's agent and returned to Wesco.
*558 Having correctly identified Wesco as the offeror, the trial court apparently agreed with Wesco's argument that Moore accepted the offer without making its acceptance expressly conditional, under Code § 8.2-207, on Wesco's assent to the additional term of elimination of the disclaimer of liability for consequential damages. We assume, without deciding, that if the June 6 letter of Moore constituted its acceptance of the Wesco proposal, the contract was formed subject to the provisions of Code § 8.2-207, and the reasoning of the trial court was correct.
However, we believe that the contract arose at an earlier date, when the signed Purchase Order was returned by Moore to Wesco's office. Since the Purchase Order was prepared by Wesco, acceptance in this instance would mean nothing more than receipt of the executed document in its office. This occurred either on May 25, as Wesco asserts without support from the record, or at some later date prior to the submission by Moore of its bid on the electrical subcontract.[5] Since we hold that a contract already existed by June 6, Code § 8.2-207, which applies only to the formation of contracts, is irrelevant. See Columbia Nitrogen Corporation v. Royster Company, 451 F.2d 3, 11-12 (4th Cir. 1971). We conclude that the disclaimer of liability was a part of the contract, that the reference in the Purchase Order to the plans and specifications was descriptive of the stage lighting only, and that the subsequent correspondence between the parties merely evidenced an unsuccessful effort by Moore to prevail upon Wesco to eliminate the clause disclaiming liability for damages caused by delay in shipment.
For the reasons assigned, we will affirm the judgment of the trial court.
Affirmed.
NOTES
[1] The date on the original Purchase Order may be read either as May 23 or as May 25. The parties have used May 25 throughout and we will accept this as the correct date.
[2] Code § 8.2-207 provides in part as follows:

"(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms."
* * * * * *
[3] Code § 8.2-206(1) provides in part:

"(1) Unless otherwise unambiguously indicated by the language or circumstances
* * * * * *
"(b) an order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or nonconforming goods, ...."
[4] Code § 8.2-204 provides in part:

"(1) A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.
"(2) An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined."
* * * * * *
[5] Moreover, we believe that even if Moore is deemed to be the offeror, it still would not prevail. By its own admission the terms of the offer are contained in the Purchase Order, which clearly provides that Wesco would not be liable for consequential damages for late delivery. Moore's June 6 letter, at most, sought to interpret this original offer but did not purport to withdraw or modify it. We reject Moore's interpretation of the "subject to plans and specifications" language as incorporating Moore's subcontract schedule into its contract with Wesco. On its face, such language refers to the specifications describing the kinds and quantities of equipment for the stage lighting itself, not the entire subcontract. Thus even if Moore made the offer, its terms included Wesco's liability disclaimer, and this is what was accepted by Wesco on May 25, or some later date.