PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

ROANOKE CEMENT COMPANY, L.L.C.,
            *Plaintiff-Appellant,*

v.

FALK CORPORATION; HAMILTON
SUNDSTRAND CORPORATION,
            *Defendants-Appellees.*

No. 04-2047

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Glen E. Conrad, District Judge.
(CA-03-753-7)

Argued: May 25, 2005

Decided: July 1, 2005

Before WIDENER, WILKINSON, and NIEMEYER, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Widener and Judge Niemeyer joined.

## COUNSEL

**ARGUED:** James William Logan, Jr., LOGAN, JOLLY & SMITH, L.L.P., Anderson, South Carolina, for Appellant. Michael James Garnier, GARNIER & GARNIER, P.C., Falls Church, Virginia, for Appellees. **ON BRIEF:** James W. Barkley, Elisabeth M. Ayyildiz, MORIN & BARKLEY, Charlottesville, Virginia, for Appellant. Jean-Pierre Garnier, GARNIER & GARNIER, P.C., Falls Church, Virginia, for Appellees.

**OPINION**

WILKINSON, Circuit Judge:

In this diversity action we must decide whether appellant is entitled to indemnification for losses associated with the failure of a machine part that appellee helped manufacture. We hold that the contract contained no clause requiring such indemnification. We therefore affirm the judgment of the district court.

I.

Appellant Roanoke Cement Company, L.L.C., a Virginia corporation that manufactures masonry cement, contracted with Fuller Company to design and build a "ball mill" for Roanoke's plant. Fuller subcontracted for the "pinion shaft," a component of the ball mill, with appellee Falk Corporation of Delaware. To this end, Fuller sent Falk a purchase order on June 8, 1999. This document described the required technical specifications of the pinion shaft and set out the delivery date and price. The order also stated that "[a]cceptance . . . including [of] all terms and conditions on the face and reverse [ ] shall be deemed given upon . . . commencement of work on this order." Under one of these "terms and conditions," the seller was to "indemnify, defend, and save [Fuller and Roanoke] harmless from any and all claims, liabilities, damages, losses, settlements and expenses [for] loss of or damage to property in connection with the materials furnished hereunder."

After receiving the order, Falk began its internal review process to determine whether it could manufacture a conforming pinion. To facilitate this determination, appellee sent a purchase order for "pinion forging" to another merchant. Satisfied that it could build the pinion as specified, Falk sent an "acknowledgment" back to Fuller on July 30. This document made itself "contingent upon acceptance of Falk's standard terms and conditions listed on the reverse side." These terms and conditions made clear that "[i]n no case shall [Falk] be liable for any special, incidental, or consequential damages based upon breach of warranty, breach of contract . . . or any other legal theory," "regardless of anything which may appear on [the] purchase order."

Fuller received the acknowledgment form without protest. The ball mill, including the completed pinion, was installed in Roanoke's facility in May 2000. In 2001, the pinion failed and appellant experienced a business interruption. The company instituted the present action to recover for losses associated with that interruption. After a bench trial, the district court found for Falk. Roanoke appealed its claim for indemnification under the terms of the purchase order.

## II.

We review a judgment following a bench trial under a mixed standard of review — factual findings may be reversed only if clearly erroneous, while conclusions of law, including contract construction, are examined de novo. *Williams v. Sandman*, 187 F.3d 379, 381 (4th Cir. 1999); *Scarborough v. Ridgeway*, 726 F.2d 132, 135 (4th Cir. 1984). We apply the choice of law provisions of our forum state. The applicable Virginia choice of law rule states that "[f]ailing [an] agreement" on which state law to apply, "this act applies to transactions bearing an appropriate relation to this Commonwealth." Va. Code Ann. § 8.1-105(1) (Michie 2001).[1] We therefore find that Virginia law governs. *See Besser Co. v. Hansen*, 415 S.E.2d 138, 143 (Va. 1992).

## III.

The parties agree that a contract existed between them, as the UCC requires them to do. *See* §§ 8.2-204, 8.2-207(3). Roanoke and Falk differ, however, as to the terms of their agreement. On appellee's urging, the district court found that the acknowledgment "became the contract between" Fuller and Falk. Appellant alleges, to the contrary, that the method of acceptance specified in the purchase order — "commencement of work" — was satisfied by Falk before it returned the acknowledgment. Thus the exclusive contractual terms are those specified in the purchase order, including the indemnification clause.

Appellant's argument that the terms of the purchase order are controlling is unpersuasive. It is true that a purchase order is generally

---

[1]Part of the Virginia UCC was repealed and recodified. *See* Va. Code Ann. §§ 8.1A-101 to 310 (Michie Supp. 2004). All citations herein are to the 2001 version, which governed the interactions of the parties.

"an offer which may then be accepted or rejected by a seller." *J.B. Moore Elec. Contractor, Inc. v. Westinghouse Elec. Supply Co.*, 273 S.E.2d 553, 556 (Va. 1981). And the UCC recognizes that acceptance may be given "in any manner and by any medium reasonable in the circumstances." § 8.2-206. However, provisions in the offer making "commencement of work" or the like a method of acceptance should not be interpreted too broadly.

Sellers of industrial goods will often have to confirm their ability to supply a product to a buyer's specifications. Such investigation is particularly needed when, as here, the product is not generic and is intended for a specialized purpose. The only effective time for this investigation to take place occurs prior to the seller agreeing to fill the order. A prudent business practice would thus be undermined if preliminary investigation somehow obligated the seller to provide the requested product even where its review ultimately revealed it to be incapable of doing so. A rule that bound the seller to all the terms of the offer as soon as investigatory steps began would induce many merchants to avoid such steps altogether. As a result, a good number of fruitful business relationships, advantageous for buyer and seller alike, would be foregone.

This state of affairs would hardly honor the "continued expansion of commercial practices" or provide the "flexibility" in commerce that the UCC aims to promote. § 8.1-102 and Comment 1; *see also Audio Visual Assocs., Inc. v. Sharp Elecs. Corp.*, 210 F.3d 254, 258 (4th Cir. 2000). We therefore conclude that the phrase "commencement of work" in the purchase order contemplated a more substantial undertaking by Falk than the tentative steps it took to confirm its ability to perform.[2]

An examination of the prior "course of dealing" between the parties

---

[2]Appellant also claims that, because appellee failed to contact appellant within ten days of receiving the purchase order, another provision equating such failure with acceptance was triggered. Roanoke neglects to mention, however, that this method of acceptance only applied when the purchase order was "confirming a previous oral agreement." Appellant has not presented evidence sufficient to demonstrate that such a binding agreement existed.

strengthens this conclusion. *See* §§ 8.1-205, 8.2-202(a). Witnesses for both parties testified that Fuller and Falk customarily did business by exchanging purchase orders and acknowledgments. Appellee also presented evidence that it routinely delayed sending an acknowledgment while it confirmed its ability to fill particular orders. Work performed during this period was not charged to Fuller, and Fuller remained free to cancel the order at any time prior to appellee's acknowledgment.

The working relationship between Falk and Fuller thus suggests that neither considered itself contractually bound in the period before an acknowledgment was sent. This observation undermines Roanoke's attempt to stand on the indemnity provision of the purchase order here. Indeed, appellant does not dispute Falk's account of the parties' prior course of dealings. Rather, Roanoke questions the "relevan[ce]" of this evidence and finds reliance on it "misplaced." However, the UCC endorses a wide-ranging recourse to course of dealings to reveal "a common basis of understanding" between the parties. *See* § 8.1-205(1), (3). Consideration of such evidence is thus plainly appropriate to interpret as indeterminate a provision as "commencement of work."

For the foregoing reasons, it is evident that appellee never manifested an intention to be bound by the provisions set forth in the purchase order. Instead, Falk completed its review of that order and returned the standard acknowledgment form to Fuller.[3] The rejection in this acknowledgment of the indemnification provision of the purchase order could not be clearer. In contrast to the broad "save [ ] harmless" language in the purchase order, Falk proposed a limited warranty which "[i]n no case" should extend to "special, incidental, or consequential damages [under any] legal theory."

The legal consequences of mutually exclusive provisions, such as those contained in the purchase order and acknowledgment, are well-settled. Where a contractual relationship is established, but not by a

---

[3]Roanoke denies that the acknowledgment was received by Fuller. However, the district court explicitly found that Falk did send this document and that "Fuller did not object to [its] terms." Because this finding is not clearly erroneous, it must stand on appeal. *See Williams v. Sandman*, 187 F.3d 379, 381 (4th Cir. 1999).

particular writing, "the terms of the [ ] contract consist of those terms on which the writings of the parties agree . . . ." § 8.2-207(3) and Comment 7; *see Wells, Waters & Gases, Inc. v. Air Prods. & Chems., Inc.*, 19 F.3d 157, 160-61 (4th Cir. 1994). We therefore need not even find, as the district court did, that the acknowledgment is the governing contractual document to defeat Roanoke's claim. For application of § 8.2-207(3), in light of the parties' admission that a contract existed, means that the indemnification provision of the purchase order effectively falls away. *See Brewster of Lynchburg, Inc. v. Dial Co.*, 33 F.3d 355, 362-63 (4th Cir. 1994). Appellant's reliance on that provision is therefore unwarranted.

## IV.

We hold that the contract entered into between Falk and Fuller did not include the indemnification clause contained in the purchase order. We thus conclude that Roanoke is not entitled to recover from Falk on the basis of this clause. The judgment of the district court is accordingly

*AFFIRMED.*