**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-2015**

THE CHARTER OAK FIRE INSURANCE COMPANY; TRAVELERS
PROPERTY CASUALTY COMPANY OF AMERICA,

Plaintiffs – Appellants,

v.

AMERICAN CAPITAL, LTD.; SCIENTIFIC PROTEIN LABORATORIES LLC,

Defendants – Appellees,

and

SMG,

Defendant.

------------------------------

COMPLEX INSURANCE CLAIMS LITIGATION ASSOCIATION;
AMERICAN INSURANCE ASSOCIATION,

Amici Supporting Appellants.

**No. 17-2068**

THE CHARTER OAK FIRE INSURANCE COMPANY; TRAVELERS
PROPERTY CASUALTY COMPANY OF AMERICA,

Plaintiffs – Appellees,

v.

AMERICAN CAPITAL, LTD.; SCIENTIFIC PROTEIN LABORATORIES LLC,

Defendants – Appellants,

and

SMG,

Defendant.

------------------------------

COMPLEX INSURANCE CLAIMS LITIGATION ASSOCIATION; AMERICAN INSURANCE ASSOCIATION,

Amici Supporting Appellees.

Appeals from the United States District Court for the District of Maryland, at Greenbelt. Deborah K. Chasanow, Senior District Judge. (8:09-cv-00100-DKC)

Argued: September 28, 2018                              Decided: February 6, 2019

Before KING, DUNCAN, and FLOYD, Circuit Judges.

Affirmed by unpublished opinion. Judge King wrote the opinion, in which Judge Floyd joined. Judge Duncan wrote an opinion concurring in part and dissenting in part.

**ARGUED:** Theodore J. Boutrous, Jr., GIBSON, DUNN & CRUTCHER LLP, Los Angeles, California, for Appellants/Cross-Appellees. John William Schryber, REED SMITH LLP, Washington, D.C., for Appellees/Cross-Appellants. **ON BRIEF:** Andrew Jay Graham, Steven M. Klepper, KRAMON & GRAHAM, P.A., Baltimore, Maryland; Kevin J. O'Connor, HERMES, NETBURN, O'CONNOR & SPEARING, P.C., Boston, Massachusetts; Blaine H. Evanson, Jessica R. Culpepper, GIBSON, DUNN & CRUTCHER LLP, Los Angeles, California; Rebekah Perry Ricketts, GIBSON, DUNN & CRUTCHER LLP, Dallas, Texas, for Appellants/Cross-Appellees. Kim M. Watterson, Pittsburgh, Pennsylvania, Andrew M. Weiner, REED SMITH LLP, Washington, D.C., for Appellees/Cross-Appellants. Laura A. Foggan, CROWELL & MORING LLP, Washington, D.C., for Amici Curiae.

Unpublished opinions are not binding precedent in this circuit.

KING, Circuit Judge:

These cross-appeals arise from the district court's judgment in an insurance coverage dispute involving American Capital, Ltd. ("American Capital") and Scientific Protein Laboratories LLC ("SPL") (collectively, the "Insureds") and their insurers, The Charter Oak Fire Insurance Company and Travelers Property Casualty Company of America (collectively, the "Insurers"). In 2009, the Insurers preemptively sued the Insureds in the District of Maryland — and the Insureds promptly countersued — concerning the insurance coverage obligations of the Insurers with respect to more than a thousand product liability lawsuits initiated against the Insureds and other entities by users of the blood-thinning drug heparin (the "heparin lawsuits"). Following extended discovery, the district court resolved certain claims in summary judgment proceedings. Thereafter, the court conducted a bench trial and ruled that the Insurers had not complied with their contractual obligations to defend the Insureds in the heparin lawsuits. The court awarded defense costs for the heparin lawsuits and prejudgment interest to the Insureds. In their cross-appeals, the Insurers and the Insureds each challenge multiple rulings of the court.

As further explained below, the district court carefully and patiently adjudicated the various issues presented in this litigation. We agree with the court's thorough analysis of those matters and are satisfied to adopt the rulings explained in its two primary opinions. *See Charter Oak Fire Ins. Co. v. Am. Capital, Ltd.*, No. 8:09-cv-00100 (D. Md. Mar. 3, 2016), ECF No. 545 (the "Summary Judgment Opinion"); *Charter Oak Fire Ins. Co. v. Am. Capital, Ltd.*, No. 8:09-cv-00100 (D. Md. Aug. 3, 2017), ECF No.

3

842 (the "Trial Opinion"). Put simply, we affirm the district court with respect to all the issues pursued in these appeals.

## I.

## A.

By their complaint of January 16, 2009, the Insurers sought, inter alia, a declaration that they did not owe the Insureds any contractual duty — pursuant to six insurance policies in effect between 2006 and 2009 — to defend or indemnify in connection with the heparin lawsuits.[1] In the heparin lawsuits, the plaintiffs sued the Insureds and other entities alleging that heparin was defectively manufactured and had caused physical injuries. Pertinent here, defendant SPL — in which defendant American Capital held a majority interest — produced and distributed a primary ingredient of heparin, called heparin sodium. The heparin at issue in the lawsuits allegedly contained contaminated heparin sodium that was produced and distributed by SPL.

When the Insureds sought coverage from the Insurers pursuant to the insurance policies, the Insurers refused to either defend or indemnify the Insureds in the heparin lawsuits. The Insurers interposed two rationales for denying coverage. First, they maintained that SPL was not covered under the insurance policies because those policies

---

[1] The Insurers' complaint contained four claims, seeking the following relief: rescission of the various insurance policies (Count I); reformation of the insurance policies due to mutual mistake (Count II); reformation of the insurance policies due to unilateral mistake (Count III); and declaratory relief related to the duties owed under the insurance policies (Count IV).

covered American Capital only and "American Capital did not seek insurance for any subsidiaries" in its insurance applications. *See* J.A. 4109.[2] Second, the Insurers contended that the heparin lawsuits were not subject to either defense or indemnity obligations because those lawsuits "relate[d] to the conduct of . . . a non-insured joint venture." *Id.* Specifically, SPL had entered into a joint venture agreement with a Chinese business called Changzhou Techpool Pharmaceutical Co., Ltd. ("Changzhou"), and created a joint venture under the name Changzhou SPL Co., Ltd. ("CZSPL"). According to the Insurers, the contaminated heparin sodium was sourced through a Chinese facility operated by CZSPL. Invoking a provision contained in each of the insurance policies known as the "joint venture clause," the Insurers maintained that "no person or organization is insured with respect to the conduct of any current or past joint venture." *Id.*

On April 17, 2009, the Insureds counterclaimed against the Insurers and contested the denial of coverage. Among the Insureds' counterclaims, they alleged breaches of contract due to the Insurers' failure to defend the Insureds in the heparin lawsuits, as well as a Maryland statutory tort for lack of good faith. The Insureds did not, however, explicitly plead any breach of contract counterclaim premised on the Insurers' refusal to provide indemnification.[3]

---

[2] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in these cross-appeals.

[3] In their countersuit, the Insureds alleged fourteen counterclaims. Six counts requested declaratory relief related to the rights owed to the Insureds under each of the (Continued)

5

B.

After extensive discovery in the district court, the Insurers and the Insureds each moved for summary judgment.  As explained in its Summary Judgment Opinion of March 3, 2016, the court granted partial summary judgment to each party but identified issues of fact that precluded summary judgment from being awarded on most of the claims and counterclaims.  Of particular significance, the court ruled that the insurance policies were ambiguous on whether SPL and other entities in which American Capital held an interest — American Capital's "portfolio companies" — were covered under the policies.[4]  The court focused on a policy provision known as the "majority interest clause," which provided coverage for "any organization, other than a partnership or joint venture, over which [American Capital] maintain[s] ownership or majority interest on the effective date of the policy."  *See* Summary Judgment Opinion 16; *see also* J.A. 3150.  Invoking the parties' differing interpretations of a "majority interest," the court explained that "reasonable people could disagree over [the] meaning and scope" of the majority

six insurance policies (Counts I-VI); six counts alleged breach of contract due to the Insurers' refusal to defend the Insureds in the heparin lawsuits (Counts VII-XII); one count alleged the Maryland statutory tort for lack of good faith (Count XIII); and one count alleged a Maryland common law tort for promissory fraud (Count XIV).

[4] During the summary judgment proceedings, the Insureds conceded that SPL was not covered by one of the insurance policies — the primary insurance policy for the 2006-2007 policy year — due to the timing of American Capital's acquisition of its SPL interest.  The district court therefore awarded summary judgment to the Insurers with respect to the counterclaims that relied on coverage of SPL under that policy.  The Insureds continued to maintain, however, that the other insurance policies covered SPL.

6

interest clause. *See* Summary Judgment Opinion 17. Thus, the court concluded that the ambiguity in the majority interest clause could only be resolved by a finder of fact.

The district court also ruled that the Insurers may have had a duty to defend the Insureds in the heparin lawsuits despite the joint venture clause and the existence of CZSPL — SPL's joint venture with Changzhou. That is, the Summary Judgment Opinion recognized that several of the complaints against the Insureds in the heparin lawsuits did not mention either CZSPL or Changzhou. Additionally, evidence before the court reflected that some of the contaminated heparin sodium "potentially came from a source other than Changzhou." *See* Summary Judgment Opinion 26 n.5. As such, the court rejected the Insurers' contention that the joint venture clause precluded any defense obligation with respect to the heparin lawsuits.

In order to resolve the disputes of material fact, the district court — with the agreement of the parties — conducted a bench trial. That six-week bench trial extended from March 8 to April 18, 2017. At the trial's conclusion, the court decided the remaining issues and ruled in favor of the Insureds on four of their counterclaims for breach of contract due to the Insurers' failure to provide a defense in the heparin lawsuits. The court ruled against the Insureds on two of their other counterclaims — including the counterclaim for lack of good faith under Maryland law — and dismissed the Insureds' remaining counterclaims. The court also rejected all the outstanding claims of the Insurers, as alleged in their complaint. Predicated on the Insureds' success on the four counterclaims for breach of contract, the court awarded damages and prejudgment interest to the Insureds.

7

The district court memorialized its trial rulings in its comprehensive Trial Opinion of August 3, 2017, explaining its findings, conclusions, and the judgment. The Trial Opinion engaged in an exhaustive review and analysis of the heparin lawsuits, the pertinent insurance policies, and the applicable Maryland legal principles.

In concluding that the Insurers owed a contractual defense duty to the Insureds, the Trial Opinion ruled that, under the policies' majority interest clause, the policies applied to SPL because "American Capital maintained a majority interest in SPL" during the policy coverage periods. *See* Trial Opinion 31. Reiterating its conclusion from the Summary Judgment Opinion that the majority interest clause is ambiguous, the district court construed the ambiguity against the drafters — the Insurers — and determined that American Capital's financial interest in SPL satisfied the majority interest requirement, thus extending coverage to SPL.[5]

The district court also concluded that the heparin lawsuits triggered the Insurers' defense duty under the pertinent insurance policies. As recited in the Trial Opinion, Maryland's "potentiality rule" dictates that an insurer "must defend [an insured] if there is a potentiality that the claim could be covered by the policy." *See* Trial Opinion 18-19 (quoting *Maryland Cas. Co. v. Blackstone Int'l Ltd.*, 114 A.3d 676, 682 (Md. 2015)).

___

[5] The district court did not rule on whether the insurance policies covered all of American Capital's portfolio companies. According to the Trial Opinion, such a determination would have required "numerous factual findings for which there [was] insufficient evidence." *See* Trial Opinion 40. In any event, the Trial Opinion observed that, because the court determined that the Insurers had a duty to defend the Insureds by way of the coverage of SPL, the court had no reason to resolve any question regarding coverage obligations to the other portfolio companies.

Applying that rule, the Trial Opinion determined that "there existed the potentiality for covered judgments against" the Insureds arising from the heparin lawsuits. *Id.* at 26. That is, the finder of fact in the heparin lawsuits could have determined that SPL — separate from the CZSPL operations — was the source of the contaminated heparin sodium. In that event, there could have been a covered judgment against the Insureds, i.e., a judgment where coverage was not precluded by the policies' joint venture clause. Such a possibility was sufficient to trigger the Insurers' defense duty.

Having concluded that the Insurers owed a duty to defend the Insureds, the Trial Opinion next determined that the Insurers had breached that duty by failing to provide a defense in the heparin lawsuits. As the district court explained, it was undisputed that the Insurers "did not offer, at any time, to defend [the Insureds] in the heparin litigation or to fund their defense." *See* Trial Opinion 32. And because the Insurers had initially notified their Insureds — by letter of January 16, 2009 — that the heparin lawsuits were not covered by any of the applicable insurance policies, the court determined that the Insurers' breach of their coverage obligations initially occurred on that date.

Turning to the issues of damages arising from the Insurers' breach of their duty to defend, the Trial Opinion described the "detailed" nature of the Insureds' evidence concerning attorneys' fees and litigation expenses that they had incurred in connection with the heparin lawsuits. *See* Trial Opinion 68. Recognizing the complexity of those lawsuits, the district court found that the claimed fees and expenses were amply supported by the evidence and were "reasonable and necessary." *Id.* at 74. The court also determined that the Insureds had proved they were ultimately responsible for such

9

legal fees and expenses — totaling approximately $63 million — in the absence of coverage by the Insurers. As the court explained, in exchange for their heparin lawsuit codefendants funding the upfront costs of a joint defense, the Insureds had entered into an agreement to reimburse those codefendants at a later time. And had the codefendants failed to pay the joint defense costs, the Insureds were responsible for those costs. Consequently, the court ruled that the Insureds had actually incurred the claimed fees and expenses in defending the heparin lawsuits. Moreover, applying Maryland law, the court awarded the Insureds the full amount of the joint defense costs upon finding that the claims against the Insureds and their codefendants were "not only reasonably related but [also] inextricably intertwined." *Id.* at 90.

Finally, the Trial Opinion awarded prejudgment interest to the Insureds in the amount of $24 million because the joint defense costs were readily "calculable, and thus fixed and ascertainable." *See* Trial Opinion 92-93 (quoting *Harford Cty. v. Saks Fifth Ave. Distrib. Co.*, 923 A.2d 1, 14 n.20 (Md. 2007)). As the district court observed, the Insurers knew that the defense costs were accruing and, but for their breach of coverage obligations, would have known the specifics of those costs. All told, the court awarded the Insureds approximately $87 million.

In addition to spelling out the district court's findings and conclusions in support of its awards to the Insureds, the Trial Opinion further explained the court's earlier ruling that the Insureds had failed to sufficiently plead counterclaims against the Insurers for

10

breach of contract premised on a duty to indemnify.[6] As the court specified, although the Insureds had alleged counterclaims for breach of the duty to defend, they had not alleged a breach of a duty to indemnify. The court rejected the Insureds' contention that their counterclaims for breach of the defense obligation should be read to include counterclaims for breach of an indemnity obligation, reasoning that a claim for indemnity is distinct from a claim for defense and thus had to be pleaded explicitly.

The Trial Opinion also found that the Insureds had failed to satisfy their burden of proof on the good faith counterclaim. Applying Maryland's "totality of the circumstances" standard, the court ruled that the Insureds had not shown that the Insurers were unreasonable in believing that the insurance policies did not require a defense of the Insureds in the heparin lawsuits. *See* Trial Opinion 58, 61 (quoting *All Class Constr., LLC v. Mut. Benefit Ins. Co.*, 3 F. Supp. 3d 409, 416-18 (D. Md. 2014)).

After the district court filed its Trial Opinion and entered its judgment, the Insurers noticed their appeal (No. 17-2015), and the Insureds then noticed their cross-appeal (No. 17-2068). We possess jurisdiction pursuant to 28 U.S.C. § 1291.

---

[6] During a hearing about a week before the bench trial, the district court announced from the bench its ruling that the Insureds had failed to allege counterclaims for breach of an indemnity duty. Quoting the transcript of that hearing, the Trial Opinion explained that the Insureds "never have [pleaded] breach of [a] duty to indemnify in this case, and it [is] too late, too close to trial to revisit that" issue. *See* Trial Opinion 14.

11

II.

In their appeal, the Insurers contend that the district court erred in five respects.

They assert that:

- The court erred in ruling under Maryland's potentiality rule that the Insurers had a duty to defend the Insureds in the heparin lawsuits and in determining that the joint venture clause did not preclude coverage;

- The court erred in ruling that the relevant insurance policies, through the court's construction of the majority interest clause contained therein, covered SPL;[7]

- The court erred in ruling that the Insureds were entitled to the joint defense costs for the heparin lawsuits;

- The court erred in ruling that the claimed attorneys' fees were actually incurred and reasonable; and

- The court erred in ruling that the Insureds were entitled to prejudgment interest.

By their cross-appeal, the Insureds present two issues. They challenge the court's rejection of their good faith counterclaim, and they maintain that the court also erred in concluding that they failed to sufficiently plead counterclaims for indemnity.

---

[7] In asserting that the district court erred in ruling that the insurance policies covered SPL, the Insurers more broadly contend that the court "erred in construing the [insurance] policies to extend coverage to American Capital's portfolio companies." *See* Br. of Appellants 46. As explained in the Trial Opinion, however, the court did not reach the question of whether the policies covered all of American Capital's portfolio companies. *See supra* note 5.

After a bench trial, we review the district court's factual findings for clear error only. *See Roanoke Cement Co. v. Falk Corp.*, 413 F.3d 431, 433 (4th Cir. 2005). On the other hand, we review de novo the court's conclusions of law. *Id.*

Both of the district court's opinions that underlie these appeals — the Summary Judgment Opinion and the Trial Opinion — are thorough and well-reasoned. Having carefully assessed those opinions, the record on appeal, the appellate briefs submitted by the parties, and the oral argument, we are satisfied that the district court did not err in its challenged rulings. We therefore reject each of the appellate contentions presented here, and we affirm the judgment on the opinions of the district court.[8]

---

[8] Respectfully, we cannot agree with our good colleague, who dissents in part from today's decision, that the district court committed two errors necessitating remand for further proceedings. First, relying on Maryland precedent recognizing that the duty to defend may cease if the plaintiffs in the underlying litigation abandon the only theories that would result in covered liability, the dissent asserts that the district court erroneously failed to determine if and when the duty to defend ceased here. As the dissent recognizes, however, Maryland requires insurers "to defend all claims, notwithstanding alternative allegations outside the policy's coverage, until such times . . . that the claims have been limited to ones outside the policy coverage." *See Utica Mut. Ins. Co. v. Miller*, 746 A.2d 935, 940 (Md. Ct. Spec. App. 2000) (internal quotation marks omitted). Nothing in this record reflects that the claims in the heparin lawsuits were ever so limited, such as by the plaintiffs' amendment of their complaints. Rather, the Insurers simply argue that the duty to defend ceased when discovery revealed that all of the contaminated heparin sodium at issue came from CZSPL and Changzou. In these circumstances, the duty to defend could not have ceased because the source of the contaminated heparin sodium nevertheless remained — as the district court found — "an issue to be resolved in the underlying tort suits." *See* Trial Opinion 24.

Next, regarding the damages award, the dissent takes issue with the district court's decision not to exclude the defense costs attributable to the claims against codefendant Baxter. But we are satisfied that the court properly applied Maryland law and committed no clear error in its finding that the claims against the Insureds and their codefendants were "not only reasonably related but [also] inextricably intertwined." *See* Trial Opinion 90.

13

No. 17-2015 — *AFFIRMED*

No. 17-2068 — *AFFIRMED*

DUNCAN, Circuit Judge, concurring in part and dissenting in part:

The majority opinion surveys the long-running and complex factual and procedural backdrop against which the district court came to its conclusions, most of which I, along with the majority, am happy to adopt. In my view, however, the district court and the majority have allowed the complexity of the litigation to which the Insurers' duty to defend applied, and the range of unsuccessful arguments that they have raised to avoid liability from their failure to do so, to obscure significant limitations on the extent of that liability. I dissent from the majority opinion with respect to two such limitations that it and the district court fail to recognize.

First, I would hold that the Insurers' duty to defend ceased when the Insureds no longer faced lawsuits proceeding on a theory of liability that, if proven, would trigger liability within the policy coverage ("potentially covered allegations"). Therefore, I would hold that the district court erred in neglecting to determine whether and when the heparin lawsuits ceased raising potentially covered allegations and by failing to cut off the Insurers' duty to defend as of that date.

Second, I would hold that the Insureds had no obligation to pay the legal fees of parties not covered by the insurance policies. Although I recognize the utility to the Insureds of entering into a joint defense agreement with drug manufacturer Baxter, a codefendant in many of the heparin lawsuits, as well as the practical benefits of coordinating defenses in a multi-district litigation, I do not see that either provides a sufficient basis under Maryland law for allowing an insured to unilaterally bind its

15

insurer to pay the legal fees of an uncovered third party without the insurer's input, cooperation, or consent.

Because the majority's resolution of these issues likely imposes millions of dollars of damages on the Insurers that are, in my view, unwarranted, I write separately to address each.

A.

First, I would hold that the district court failed to properly apply the "potentiality rule" by failing to exclude from its damages award litigation costs that the Insureds incurred to defend lawsuits that raised no potential for covered liability.

Under Maryland law's "potentiality rule," an insurer is obligated to defend a lawsuit against its insured when the allegations of the plaintiff in that underlying lawsuit, if proven, would trigger liability covered by the insurance policy. *Aetna Cas. & Sur. Co. v. Cochran*, 651 A.2d 859, 861 (Md. 1995) ("The obligation of an insurer to defend its insured . . . is determined by the allegations in the tort actions.") (citation omitted). A court seeking to determine whether the potentiality rule is triggered looks to the plaintiff's allegations in that underlying lawsuit. *Id.* It does not undertake its own examination of the facts underlying those allegations to determine whether the lawsuit will result in covered liability.

This rule sometimes requires insurers to pay to defend lawsuits against their insureds that, because of the true facts underlying the dispute, should not result in covered liability--for instance, because the plaintiff's complaint does not specify or

16

misstates certain facts underlying liability. The Insurers here faced exactly such a situation: the Insureds faced no covered liability because all of the contaminated heparin originated with CZSPL and so fell within the policies' joint-venture exclusion, but many of the heparin plaintiffs advanced alternative theories about the heparin's origin, or declined to speculate about its source prior to discovery.[1] As the district court and the majority correctly recognize, these lawsuits triggered the Insurers' duty to defend, because liability for SPL-sourced heparin that did not involve CZSPL would be within the policies' coverage.

However, the duty to defend under the potentiality rule is not unlimited. An obvious corollary of the rule is that it does not apply where a lawsuit does not allege claims that are potentially covered by the insurance policy. *See Brohawn v. Transamerica Ins. Co*., 347 A.2d 842, 850 (Md. 1975) ("*If* the plaintiffs in the tort suits allege a claim covered by the policy, the insurer has a duty to defend.") (emphasis added). For instance, determining whether liability from a lawsuit would be covered under an insurance policy may depend on a determination extrinsic to that lawsuit, such as the proper construction of a term of the applicable insurance policy that is not relevant to the underlying litigation--and that extrinsic issue may be properly determined by

---

[1] The district court determined in its summary judgment order of March 3, 2016 that CZSPL-sourced heparin was excluded from coverage under the relevant policies. *Charter Oak Fire Co. v. Am. Capital, Ltd.*, No. DKC 09-0100, 2016 WL 827380, at *9 (D. Md. Mar. 3, 2016) (unpublished) ("Even if the cause of action alleged were negligence or strict products liability against SPL and American Capital, the joint venture clause excludes the heparin lawsuits from coverage if the underlying liability relates, in any way, to heparin received from Changzhou.").

17

another court in an action between the insurer and the insured. *St. Paul Fire & Marine Ins. Co. v. Pryseski*, 438 A.2d 282, 286–87 (Md. 1981) (resolving the scope of the term "occurrence" in an insurance policy in a declaratory judgment action between the insurer and insured to determine whether an underlying lawsuit alleging intentional torts created a duty to defend).[2] In such a case, the insurers' duty to defend the underlying lawsuit turns on the outcome of its lawsuit against its insured.

Relatedly, plaintiffs may discover the true facts of a case over the course of a lawsuit and change their theory of liability accordingly, abandoning theories that would result in covered liability. This may occur where the underlying plaintiffs amend their complaint, or where they simply cease pursuing potentially covered allegations. *See Balt. Gas & Elec. Co. v. Commercial Union Ins. Co*, 688 A.2d 496, 510 (Md. Ct. Spec. App. 1997). At that point, an insurer's duty to defend ceases because the suit no longer raises any potential for covered liability. *See Utica Mut. Ins. Co. v. Miller*, 746 A.2d 935, 940 (Md. Ct. Spec. App. 2000) ("[T]he insurer is obligated to defend all claims, notwithstanding alternative allegations outside the policy's coverage, until such times . . . that the claims have been limited to ones outside the policy coverage.") (citation and internal quotation marks omitted); *Balt. Gas*, 688 A.2d at 510 ("[W]hen the plaintiff

---

[2] The Insureds seem to acknowledge that the source of the contaminated heparin was neither relevant nor disputed in many of the heparin lawsuits. Appellees' Br. at 39 ("[T]he [bellwether] *Johansen* judgement demonstrates that a Defendant could be held liable solely in its own capacity (and without an express or implied finding about Changzhou."). The consequence of this, however, is that the Insurers had no duty to defend those lawsuits.

18

amends the allegations, the changes in the allegations may be proffered by the insured and considered by the court to determine whether the insurer has a continuing duty to defend.").

The Insurers owed no duty to defend proceedings where the source of contaminated heparin was resolved or irrelevant and they should not be held liable for damages beyond the scope of their breach. The Insurers allege that the plaintiffs in the heparin lawsuits here ceased pursuing any theory about the source of contamination that would have brought the suits within the policies' coverage. Specifically, the Insurers argue that the truth about the source of contaminated heparin emerged in discovery in the heparin lawsuits by September 2010, defeating any potentially covered liability by establishing that all of the lawsuits alleged conduct that fell within the joint-venture exclusion to the policies' coverage. Neither the Insureds nor the district court meaningfully rebut this argument.

Although the Insurers' references to certain discovery responses do not permit us to determine when the potential for covered liability from the heparin lawsuits ended, I would hold that the district court erred in neglecting to determine whether and when this occurred. I would therefore remand for the district court to determine, at the very least with respect to each consolidated proceeding and any unconsolidated lawsuits, when, if ever, the plaintiffs' allegations no longer raised a potential for covered liability (or did not implicate or allege any dispute over the source of the heparin).

19

B.

The second error, in my view, concerns the district court's failure to exclude Baxter's defense costs from its damages award. Baxter's only relevant relationship to the Insureds is that it purchased heparin from SPL. There is no dispute that Baxter was never covered by any of the insurance policies at issue. Nevertheless, the district court assessed Baxter's costs of defending itself in the heparin lawsuits against the Insurers in this case, even though the Insurers' duty to defend never extended to Baxter. *See Pryseski*, 438 A.2d at 285 (holding that the scope of a duty to defend is limited by the scope of the insurance policy's coverage). I first set forth the facts relating to Baxter and the Insureds' joint defense of the heparin litigation and then explain why I find the district court's reasoning to be erroneous.

An insurer is liable for "attorneys' fees incurred by an insured as a result of the insurer's breach of its contractual obligation to defend the insured against a claim potentially within the policy's coverage." *Bankers & Shippers Ins. Co. v. Electro Enters., Inc.*, 415 A.2d 278, 282 (Md. 1980). This includes the reasonable cost of defending an entire suit in which there is a potentiality of coverage. *Cont'l Cas. Co. v. Bd. of Educ.*, 489 A.2d 536, 544 (Md. 1985).[3]

---

[3] This rule is distinct from that applicable to directors and officers liability insurance policies ("D&O policies"), in which the duty to defend is claim-specific rather than suit-specific, and recoverable costs for a breach of that duty include only those costs that are "reasonably related" to the defense of a covered claim. *See Cont'l Cas. Co.*, 489 A.2d at 542–45; *Perdue Farms, Inc. v. Travelers Cas. & Sur. Co.*, 448 F.3d 252, 260 (4th Cir. 2006).

Here the Insureds began negotiations to enter into a joint defense agreement with Baxter before the Insurers issued a coverage position, in violation of policy terms that required the Insurers' involvement. After a substantial process for resolving internal conflicts of interest, Baxter and the Insureds reached a joint defense agreement for coordinating their responses to the heparin lawsuits. The joint defense agreement itself provided for Baxter to pay a significant portion of the legal fees incurred in defending the heparin lawsuits, establishing cost "tiers" within which different parties would pay Kirkland and Ellis's fees. It also made the Insureds partially responsible for paying the legal fees associated with defending any lawsuits against Baxter relating to heparin sourced through SPL, regardless of whether the Insureds were also named as defendants in those lawsuits. However, it excluded lawsuits that were only brought against the Insureds and not Baxter.

Pursuant to this joint defense agreement, Baxter and the Insureds incurred over sixty million dollars in legal fees invoiced by Kirkland and Ellis. The district court awarded almost all of these fees against the Insurers in damages without respect to who paid the expenses in question. It found that the fees were all incurred "on behalf of" the Insureds and thus were properly subject to recovery by the Insureds. *Charter Oak Fire Co. v. Am. Capital, Ltd.*, No. DKC 09-0100, 2017 WL 3315306, at *27 (D. Md. Aug. 3, 2017) (unpublished).

I do not see how the reasonable costs of the entire suit can include all defense costs incurred by each of the parties to the joint defense agreement when Baxter was not covered by the insurance policies. The Insurers' duty to defend did not extend to lawsuits

21

that named only Baxter as a defendant. Nevertheless, expenses related to these suits formed part of the joint defense costs and so became part of the damages award. I would hold that the district court erred in this regard.

Furthermore, with respect to those lawsuits that did trigger the Insurers' duty to defend, the "reasonable cost of the entire suit" standard provides no basis to deem the Insureds to have incurred all of Baxter's litigation expenses. Baxter and the Insureds together did indeed incur all these expenses, but that does not explain why the Insurers are required to pay Baxter's legal bills. To the extent that the Insureds did "incur" such expenses, it was not "reasonable" of them to do so. Baxter and the Insureds had different interests and different levels of exposure to liability. The joint defense agreement itself reflects this, by establishing cost "tiers" within which different parties had to cover Kirkland and Ellis's fees. So does the extensive conflict resolution process that the Insureds had to undergo with Baxter in order to enter into that agreement.

The district court included Baxter's defense costs as damages because it found the costs to be both "reasonably related to" and "inextricably intertwined" with the defense costs for lawsuits covered by the Insurers' duty to defend. *Charter Oak*, 2017 WL 3315306, at *29–30. The majority opinion simply affirms this finding. However, the determination that these costs were "inextricably intertwined" is a conclusion, for which neither the district court nor the majority opinion provide analysis or evidentiary support.

This standard apparently derives from the unpublished district court case *Baker's Express*, which determined that the "reasonably related" costs of uncovered codefendants were recoverable in a duty-to-defend action brought against a general commercial

22

liability insurer by its insured. *Baker's Express, LLC v. Arrowpoint Capital Corp.*, No. ELH-10-2508, 2012 WL 4370265, at \*21 (D. Md. Sept. 30, 2012) (unpublished). In addition to the fact that it has no precedential value, I do not believe that *Baker's Express* provides the appropriate standard. And even if it does, I am not convinced that it compels the result reached by the district court.

*Baker's Express* held that insureds could recover the defense costs of uncovered codefendants pursuing a joint defense strategy in a lawsuit that triggered an insurer's duty to defend, so long as the costs of the uncovered defendants were "reasonably related" to the covered costs. 2012 WL 4370265, at \*21. *Baker's Express* adapted this standard in part from *Federal Realty Investment Trust v. Pacific Insurance Co.*, 760 F. Supp. 533 (D. Md. 1991), another case involving covered and uncovered codefendants. However, *Federal Realty* involved a different type of insurance policy--D&O policies. *Id.* at 534. The "reasonably related" standard derives from these D&O policies because in those policies, and unlike in the policies at issue here or in *Baker's Express*, an insurer's duty to defend is limited to potentially-covered claims *within* a lawsuit, rather than the entirety of any lawsuit alleging any potentially covered allegations. Consequently, in D&O policy disputes, an insured's recoverable costs include defense costs that are "reasonably related" to costs incurred in defending against covered claims. *Perdue Farms*, 448 F.3d at 260.

Because the "reasonably related" standard derives from the different nature of the duty to defend in D&O policies, both the Maryland Court of Appeals and this court have cautioned against applying it in the context of general commercial liability policies such

23

as those at issue here. *See Cont'l Cas. Co.* 489 A.2d at 544; *Perdue Farms*, 448 F.3d at 260 (noting that the "'reasonably related' principle has been limited . . . in most cases . . . to the specific area of D&O insurance"). Indeed, the district court itself criticized the extension of the "reasonably related" test to this case when it rejected the Insurers' arguments for cost allocation. *Charter Oak*, 2017 WL 3315306, at \*29. The extension of this standard in *Baker's Express* was therefore likely unwarranted, as was its application here. I would therefore hold that the district court erred in relying on it to award Baxter's expenses as damages.

Even if *Baker's Express* is applicable, however, I am not convinced that it justifies the result reached in this case for several reasons. First, this rule provides no basis for awarding as damages the defense costs for lawsuits filed only against Baxter. The obligation to reimburse "reasonably related" defense costs for uncovered parties under *Baker's Express* only extends to uncovered parties in individual lawsuits against covered parties--not to lawsuits in which the insured is not a party. *Baker's Express*, 2012 WL 4370265, at \*21.

Second, the uncovered parties in *Baker's Express* whose defense costs were both "reasonably related" to and inextricably intertwined with the costs of the insured were the insureds' employees, and the thrust of the lawsuit was an attempt to hold the employer vicariously liable for their misconduct. As such, the insurers could not point to "any particular expenses" or "any defenses" that applied only to the individual defendants. *Id.*

It is true that the heparin lawsuits here were interrelated--the effect of bellwether settlements on the aggregate settlement value of consolidated suits in the multi-district

24

litigation would have encouraged any reasonably competent attorney representing only the Insureds to work closely with Baxter on many aspects of those bellwether suits. However, this interdependence is a long way from establishing the sort of "inextricable intertwinement" that was present in *Baker's Express* or even a reasonable relationship between the costs assessed against the Insurers and the costs directly related to the defense of the Insureds. Indeed, the finding of the district court and the majority that all defense costs were "inextricably intertwined," *Charter Oak*, 2017 WL 3315306, at \*30, is belied by the extensive conflict resolution process that the Insureds and Baxter had to undergo before entering into the joint defense agreement, as well as by American Capital's early notes that it hoped for a cost-free dismissal for itself.

Furthermore, neither the legitimate interest of the Insureds in the outcome of the bellwether trials, nor the evidentiary difficulties of allocating costs that were, for Kirkland and Ellis's purposes, treated as those of a single client, warrant ignoring the moral hazard that flows from allowing an Insured and its codefendants to simply run their fees together on the Insurer's tab without the Insurer's input or approval.

For these reasons, I would hold that the district court erred in failing to allocate costs between covered and uncovered parties and remand for further proceedings.

25